GREENBERG TRAURIG, LLP
Leslie D. Corwin (LC-0254)
Rachel Izower (RI-0050)
200 Park Avenue
New York, New York 10016
Tel.:  (212) 801-9200

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

KENNETH F. PHILLIPS,                                          :

                                      Plaintiff,               :

                                                              :    Case No. 07 CV 3417 (DAB)
                      v.                                       :
                                                              :
REED  GROUP,  LTD.,  REED  GROUP,  LLC,  STACEY :
GRACE,  PRESLEY  REED,  PETER  B.  NAGEL,  as :
Trustee of the Presley Reed 1999 Family Trust        :
                                                              :
                                      Defendants.              :
------------------------------------------------------------------ x

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................2

    A.    This Action is Centered in Colorado and Has No Connection to New York ..........2

    B.    Plaintiff's Contentions that He Was an Equity Partner ...........................................5

        1.    The Draft, Unexecuted LLC Operating Agreement .....................................5

        2.    Allegations of an Equity Interest in the Reed Group....................................7

        3.    The "Joint Venture" Allegations ................................................................7

        4.    Allegations that Plaintiff Was Promised a Share in Any Post-Sale
             Business ..................................................................................................8

    C.    Plaintiff's General Claims of Entitlement to More Money ...................................10

ARGUMENT.....................................................................................................10

I.    The Complaint Should be Dismissed because the Court Lacks Personal
    Jurisdiction over each Defendant ........................................................................10

    A.    Standard for Establishing Jurisdiction in New York Over Non-
        Domiciliaries ......................................................................................11

    B.    There is No Specific or General Jurisdiction in New York Over Any
        Defendant............................................................................................12

II.    The Southern District of New York is Not a Proper Venue ...............................14

III.    The Complaint Should be Dismissed Because Plaintiff Has Failed to State a
    Claim ..............................................................................................................17

    A.    Standard of Review for a 12(b)(6) Motion to Dismiss and Applicable Law ........17

    B.    Plaintiff Cannot Recover Against The Individual Defendants Personally............18

    C.    The Draft Unexecuted and Incomplete Operating Agreement is Not a
        Contract ...............................................................................................19

    D.    The Economic Loss Rule Bars Plaintiff's Claims of Negligent
        Misrepresentation ................................................................................20

i

E.    Plaintiff Does Not Allege an Essential Element of Quantum Meruit and
Unjust Enrichment -- The Value of His Alleged Services, Mandating
Dismissal .................................................................................................................21

F.    The Alleged "Promises" are Not Actionable and Plaintiff Could Not Have
Reasonably Relied Upon Them ..........................................................................22

G.    Plaintiff is Owed No Fiduciary Duty..................................................................24

CONCLUSION ..................................................................................................................25

ii

## TABLE OF AUTHORITIES

**Federal Cases**

*American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995)................................................19

*Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615 (S.D.N.Y. 1995)...........................16

*Berman v. Informix Corp.*, 30 F. Supp. 2d 653 (S.D.N.Y. 1998)................................16

*Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular, Inc.*, No. 05 Civ. 9994
    (KMW), 2007 U.S. Dist. LEXIS 17163 (S.D.N.Y.)..................................................11

*Callen v. Taylor*, No. 05 Civ. 5713, 2006 U.S. Dist. LEXIS 43334 (S.D.N.Y. 2006).................11

*Chrysler Capital Realty, Inc. v. Grella*, 942 F.2d 160 (2d Cir. 1991)...........................18

*Colida v. Panasonic Corp. of N. Am.*, 2005 U.S. Dist. LEXIS 27785 (S.D.N.Y.).......................17

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ..................................................17, 18

*Curley v. AMR Corp.*, 153 F.3d 5 (2d Cir. 1998) ...................................................18

*Dardana Ltd. v. Yugansknefiegaz*, No. 00 Civ. 4633 (DAB), 2001 U.S. Dist. LEXIS
    16078 (S.D.N.Y.)................................................................................12, 14

*DFP Mfg. Corp. v. Northrop Grumman Corp.*, 1999 WL 33458384 (E.D.N.Y. 1999)...............21

*DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir. 2001) ..........................10

*Family Internet, Inc. v. Cybernex, Inc.*, 1999 WL 796177 (S.D.N.Y.) ...........................13

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ......................17

*Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355 (2d Cir. 1970) ..............11

*Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370 (S.D.N.Y. 2006) ...............16

*Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984) ............................14

*Hernandez v. Graebel Van Lines*, 761 F. Supp. 983 (E.D.N.Y. 1991) ...........................16

*Hoffritz for Cutlery v. Amajac*, 763 F.2d 55 (2d Cir. 1985) ...................................12

*IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137 (2d Cir. 2004).....................................18

*Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06 Civ. 0615 (BSJ),
    2007 U.S. Dist. LEXIS 43567 (S.D.N.Y.) .....................................................10

iii

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................................11

*Jones v. Denver Pub. Sch.*, 427 F.3d 1315 (10th Cir. 2005) ...........................................................22

*Joyner v. Greiner*, 195 F. Supp. 2d 500 (S.D.N.Y. 2002) ................................................................18

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) ............................................................................22

*Klonis v. National Bank of Greece, S.A.*, 2007 WL 959257 (S.D.N.Y. 2007) ...............................14

*Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998) ..............................................................................11

*Landoil Res. v. Alexander & Alexander Serv.*, 918 F.2d 1039 (2d Cir. 1990) ...............................13

*Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712 (E.D.N.Y. 1996) ..........................17

*Lupien v. Citizens Utilities Co.*, 159 F.3d 102 (2d Cir. 1998) .........................................................17

*Mantello v. Hall*, 947 F. Supp. 92 (S.D.N.Y. 1996) .......................................................................11

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) .......................13

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003) ...............................................................................................17

*Ohio Savings Bank v. Manhattan Mortgage Co., Inc.*, 455 F. Supp. 2d 247 (S.D.N.Y. 2006).................................................................................................................................17

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) .........................................................................14

*Project 74 Allentown, Inc. v. Frost*, 770 F. Supp. 207 (S.D.N.Y. 1991).......................................15

*R.G. Group v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984) ..................................................20

*Sipma v. Massachusetts Cas. Ins. Co.*, 256 F.3d 1006 (10th Cir. 2001) .......................................19

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) ....................................................13

*Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824 (2d Cir. 1994) ...........................................18, 22

*U.S. Fidelity & Guar. Co. v. Rep. Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992)...............................................................................................................................15, 16

*ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F. Supp. 2d 274 (S.D.N.Y. 2000) ..............................15, 16

**State Cases**

*Ames v. Sundance State Bank*, 850 P.2d 607 (Wyo. 1993) ............................................................23

iv

*Bedard v. Martin*, 100 P.3d 584 (Colo. App. 2004) ........................................................22

*Branscum v. American Comm. Mutual Ins. Co.*, 984 P.2d 675 (Colo. App. 1999).....................21

*BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo. 2004)...................................................20, 21

*Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093
    (Colo. 1982)..........................................................................................................21

*Cloud v. Assoc'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435 (Colo.
    App. 1992)............................................................................................................24

*Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski*, 789 N.Y.S.2d 508 (2d
    Dep't 2005) ..........................................................................................................22

*Country-Wide Leasing Corp. v. Subaru of America, Inc.*, 520 N.Y.S.2d 24
    (2d Dep't 1987) .....................................................................................................22

*De La Cruz v. Caddell Dry Dock & Repair Co., Inc.*, 804 N.Y.S.2d 58
    (1st Dep't 2005) .....................................................................................................22

*Express Industries and Terminal Corp. v. New York State Dept. of Transportation*, 93
    N.Y.2d 584 (1999)..................................................................................................19

*First Nat. Bank of Meeker v. Theos*, 794 P.2d 1055 (Colo. App. 1990). ................................24, 25

*Gude v. City of Lakewood*, 636 P.2d 691 (Colo. 1981) .........................................................19

*In re Marriage of O'Brien*, 759 P.2d 826 (Colo. App. 1988)..................................................19

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,
    744 N.Y.S.2d 384 (1st Dep't 2002) ...........................................................................21

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988).....................................................13

*Laufer v. Ostrow*, 55 N.Y.2d 305 (N.Y. 1982).................................................................13

*Lufti v. Brighton Comm. Hosp. Assoc.*, 40 P.3d 51 (Colo. App. 2001).................................22

*Mariani v. Rocky Mountain Hospital and Medical Svc.*, 902 P.2d 429 (Colo. App.
    1994)....................................................................................................................23

*Martin H. Bauman Assoc. v. H&M Int'l*, 567 N.Y.S.2d 404 (1st Dep't 1991) ...........................21

*Matter of Allstate Ins. Co. (Stolarz)*, 597 N.Y.S.2d 904 (1993)............................................18

*MDM Group Assoc., Inc. v. CX Reinsurance Co., Ltd.*, 2007 WL 528800 (Colo. App.) .......24, 25

*Nelson v. Elway*, 908 P.2d 102 (Colo. 1995)...................................................................23

v

*Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417 (1989) ................................................................................................................21

*Parrott v. Coopers & Lybrand LLP*, 702 N.Y.S.2d 40 (1st Dep't 2000) ......................................21

*Patzer v. City of Loveland,* 80 P.3d 908, 912 (Colo. App. 2003) ....................................22

*Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504 (Colo. App. 2006) ......................23

*Scott Co. v. MK-Ferguson Co.*, 832 P.2d 1000 (Colo. App. 1991), *cert. denied* (1992) .............22

*Soderlun v. Public Service Co. of Colorado*, 944 P.2d 616 (Colo. App. 1997) ...........................23

*Straub v. Mountain Trails Resort, Inc.*, 770 P.2d 1321 (Colo. App. 1988) ................................19

*Wilkerson v. State*, 830 P.2d 1121 (Colo. App. 1992) ..........................................................22

*Winston Fin. Group, Inc. v. Fults Mgmt. Inc.*, 872 P.2d 1356 (Colo. App. 1994) ......................19

*Wong v. Slotkin*, 154 Misc. 2d 655 (N.Y. Misc. 1992) ..........................................................14

## Federal Statutes

28 U.S.C. § 1391(a)(1) ......................................................................................................15

28 U.S.C. § 1391(a)(2) ......................................................................................................15

28 U.S.C. §1404(a) ........................................................................................................1, 15

Fed. R. Civ. P. 12(b)(2) ...............................................................................................1, 10, 25

## State Statutes

C.R.S.A. § 38-10-112 (1999) ............................................................................................20

N.Y. C.P.L.R. § 301 ..........................................................................................................11

N.Y. C.P.L.R. § 302(a)(1) ................................................................................................11

N.Y. Gen. Oblig. Law § 5-701 (McKinney 2001) ..................................................................20

vi

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER TO THE DISTRICT OF COLORADO

Defendants Reed Group, Ltd. ("Reed Group"), Reed Group, LLC (the "LLC"), Stacey Grace ("Grace"), Presley Reed ("Dr. Reed"), and Peter B. Nagel, as Trustee of the Presley Reed 1999 Family Trust ("Nagel") respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) or in the alternative to transfer this action to the District of Colorado pursuant to 28 U.S.C. §1404(a).

### PRELIMINARY STATEMENT

Plaintiff Kenneth F. Phillips ("Plaintiff" or "Phillips"), who was terminated by the Reed Group in October 2006, brings this action for the "breach" of an unexecuted draft version of an incomplete operating agreement. This case should be dismissed on numerous grounds, both procedural and substantive. There is <u>no connection</u> between the issues raised in the Complaint and New York, much less the Southern District of New York, and not one relevant fact supporting jurisdiction or venue is even alleged. Defendants are citizens of Colorado who own no real property in New York. The LLC has no operations at all, and certainly none in New York. Nagel has never conducted any business in New York. Although Dr. Reed and Grace ("The Founders") travel to New York on business from time to time and the Reed Group has a call service center in Albany, New York, there is no conceivable connection—as would be required for personal jurisdiction—between any New York activity of a defendant and the causes of action alleged. Plaintiff bases his claims on the services Plaintiff allegedly performed and the promises Defendants allegedly made—none of which occurred in New York. The case should, therefore, be dismissed for lack of jurisdiction and venue.

The Complaint also fails to state a claim and therefore should be dismissed. Stripped of the irrelevant rhetoric and inadmissible references to alleged settlement talks, Plaintiff's claims are reduced to one issue: whether Plaintiff had any ownership interest in a Reed entity, either as

1

an equity owner or as part of a "joint venture." The existence or absence of an ownership interest is the indispensable sine qua non of Plaintiff's causes of action. Yet, in September 2006, only one month before his relationship with defendants ended, and in the very investment book Plaintiff vaunts as his creation, he admits that he owns no equity: "100% of the equity is held by the founders."

While Plaintiff saturates the Complaint with allegations about the "services" he provided, he does not, and cannot, allege any agreement or promise of a specific ownership interest, compensation amount, or even a value for his services. Instead, Plaintiff relies on vague statements (mostly his own) regarding his hopes of compensation. Similarly, Plaintiff tries and fails to show the existence of a fiduciary relationship between himself and Defendants, but as a Board Member and consultant, Plaintiff owes the duty to Defendants, not the reverse.

These procedural and substantive defects require the Complaint be dismissed in its entirety. Even if the Court determines that one or more causes of action somehow survive, at a minimum the case must be transferred to the District of Colorado.

## STATEMENT OF FACTS[1]

### A.    This Action is Centered in Colorado and Has No Connection to New York

There is no connection between New York and the parties in this case or the facts underlying its issues. All Defendants are Citizens of Colorado; Plaintiff is a Citizen of Massachusetts. The relevant events took place almost exclusively in Colorado, and Plaintiff's Complaint does not allege a single operative fact occurred in New York or a single relevant witness residing in New York.[2] July 25, 2007 Declaration of Peter B. Nagel ("Nagel Decl.") ¶ 4.

---

[1] The Complaint contains gross misstatements of fact, and allegations which are irrelevant and contradicted by the documentary evidence. Needless to say, Defendants cannot comment on all of these points in the context of a pre-answer motion to dismiss, but will address only those which are relevant. See Nagel Decl. ¶¶15-18, addressing some blatant factual inaccuracies.

[2] An alleged negotiation in Armonk, New York between Reed Group and IBM, a one-time potential purchaser of Reed Group is Plaintiff's sole allegation of any New York connection to this action. Compl. ¶ 132. Plaintiff was

2

**Reed Group.**    The Reed Group is an industry-leading provider of services related to employee absence and disability management.  Reed Group has 260 employees.  Presley Reed, Stacey Reed and the Presley Reed 1999 Family Trust together own 100% of its outstanding shares.  The Reed Group is a Colorado corporation with its principal place of business in Westminster, Colorado.  *Id.* ¶ 5.  The vast majority of the Reed Group's business is conducted at its Westminster headquarters, the office location for 140 employees including its entire sales department.  Although the Reed Group has one call service center in Albany, New York, the call center exclusively services existing Reed Group clients, does not solicit any business, and has no sales people.  Reed Group has no bank accounts in New York and does not own any real property in New York.  Reed Group does not target any marketing, advertising or business specifically to the residents or businesses of New York.  *Id.* ¶ 6.

**The LLC.**  The LLC is a Colorado Limited Liability Company which was formed in 2004, but never operated as a business and never had any of its own assets or employees.  In its articles of organization, its principal place of business is listed as Westminster, Colorado.  The LLC never finalized any operating agreement, never admitted any members and never appointed any managers.  As the LLC is completely inactive, it has no contact with New York.  *Id.* ¶ 7.

**The Founders.**  Presley Reed, MD, the founder, Chief Medical Officer and Chairman of the Reed Group, is an occupational physician and a board-certified psychiatrist.[3]  Dr. Reed is a citizen of Colorado and owns no property in New York.  *Id.* ¶ 8.  Grace, President of the Reed Group, has extensive background in project management, systems, process analysis, sales and marketing, disability guidelines, and training. Grace is a citizen of Colorado, owns no property in

---

not present and not involved in those negotiations, no sale occurred as a result of the negotiations and IBM and Reed Group are no longer pursuing a sale. Nagel Decl. ¶ 4, ftnt 1.

[3] Among other notable accomplishments, Dr. Reed founded the first pain management center in the Rocky Mountain region; is a Fellow of the American Academy of Disability Evaluating Physicians; has served as Chairman of the American Board of Independent Medical Examiners; and is a Certified Independent Medical Examiner. *Id.* ¶ 8.

3

New York, and is married to Dr. Reed. *Id.* ¶ 9. The Founders' sole office is located in Westminster, Colorado, although they travel frequently for business. All of the business they conduct while traveling is on behalf of the Reed Group; they conduct no personal business outside of Colorado. Although they have traveled to New York on behalf of Reed Group, nearly all of that travel has been to attend trade shows and conferences or to visit the Albany call service center and has no connection to any of the events at issue. *Id.* ¶ 11.

**Peter Nagel.**  Nagel is outside Colorado corporate counsel to the Reed Group and Trustee of the Presley Reed 1999 Family Trust (the "Trust"). Nagel is a citizen of Colorado and owns no property in New York. Neither Nagel nor the Trust conduct any business in New York and neither was involved in any of the events underlying this action.[4] *Id.* ¶ 12.

**Plaintiff.**  Plaintiff,[5] a Massachusetts resident, is a former consultant to, and former member of the Board of Directors of, the Reed Group. Plaintiff provided services to the Reed Group beginning in approximately 2002 and ending with his involuntary termination in October 2006. The overwhelming majority of the services he provided were either performed in Colorado or from his Massachusetts home. *Id.* ¶ 13.

In short, Plaintiff fails to allege that even one party, document or relevant potential witness[6] is located in New York or that any event took place in New York.[7] To the contrary, the vast majority of parties, witnesses, documents and relevant facts live in, work in, are stored in, or occurred in Colorado. *Id.* ¶¶ 4-14, 19.

---

[4] Plaintiff's sole allegation of any action by Nagel is that he and other "external [ ] advisors" "met with the Board to develop a plan to preserve order and morale at the firm." Compl. ¶ 71.

[5] Plaintiff appeared in this action and filed the Complaint as a *pro se* litigant. It appears, however, that Plaintiff's son, and current counsel may have improperly ghostwritten his papers in this matter. Corwin Decl. ¶ 6.

[6] Denise Meyrer, a New York resident, runs the Albany call service center for Reed Group and is listed in the Draft LLC Operating Agreement as an "economic interest owner." The other New York resident is the IBM employee who allegedly negotiated regarding a possible sale of Reed Group. Nagel Decl. ¶ 14; *see also* n. 2, *supra*.

[7] *See* Nagel Decl. ¶¶ 4-14, 19 for details about the location of documents and witnesses.

4

**B.**     **Plaintiff's Contentions that He Was an Equity Partner**

Plaintiff's Complaint is largely devoted to alleging that he had, or was promised, an equity ownership share variously in the LLC, the Reed Group, any successor to the Reed Group or in an ACOEM UMK product.[8]

> "Plaintiff and Defendants agreed that Phillips would help Defendants improve the business, develop new products and monetize their investment via a sale, merger or some other liquidity event. ... Plaintiff and Defendants agreed that Plaintiff would be compensated as an owner, having an equity share in the enterprise, rather than as a paid worker."

Complaint ("Compl.") ¶ 11, Exh. A to July 25, 2007 Declaration of Leslie D. Corwin. All Plaintiff can allege is that he <u>believed</u>, based on ambiguous "promises" and on <u>his own</u> statements, that he had an ownership interest in various Reed entities. This alleged belief is directly contradicted by a document he drafted about Reed Group one month before his termination (the "Phillips Book") in which he writes: "100% of the equity is held by the founders [Dr. Reed and Grace]." Nagel Decl. ¶ 27, Exh. E at ¶ 8.

Plaintiff disingenuously claims that, despite his sophistication as an "independent investor, developer and manager of businesses," he worked for 5800 hours over a four year period, and spent $80,000[9] in capital and business related expenses, without a single written or verbal confirmation of a set dollar figure to be paid or a set ownership interest. Comp. ¶ 11.

**1. The Draft, Unexecuted LLC Operating Agreement**

Plaintiff alleges at length he is, or believed he was, an "economic interest owner" in the LLC based on a draft of an operating agreement (the "Draft LLC Operating Agreement" or "Draft Agreement"), and he also believed that the LLC was taking over the assets and operations

---

[8] ACOEM is the American College of Occupational and Employment Medicine; it is a national trade association. The UMK ("Utilization Management Knowledgebase") was a database engine that the Reed Group created to provide a search facility of ACOEM's Occupational Medicine Practice Guidelines, 2nd Edition. Nagel Decl. ¶ 19.

[9] This is a change from Plaintiff's earlier claim that he made a "multi million dollar investment in" Reed Group or the LLC. Corwin Decl., Exh. B (April 24, 2007 Affidavit of Kenneth F. Phillips in Support of Order to Show Cause with T.R.O. in Civil Action at 2, Section III).

of the Reed Group, Compl. ¶ 63, Exh. A. The parties never finalized, never executed and never used the Draft Agreement. *Id.*, Exh. A. A simple glance at the document clearly indicates it is not a final or binding agreement; it is prominently stamped "DRAFT" and "Version: 1" on its cover, contains blanks and is unsigned. *Id.*, Exh. A at 28-30. Notably left blank are the alleged amounts of the capital contributions by each of the LLC's purported members (Dr. Reed, Grace and the Trust), the line where Plaintiff's last name allegedly should have been and the signature pages for the economic interest owners which were "to follow." *Id.*

Plaintiff clearly understood the Draft Agreement was not final or operative. In communications with Dr. Reed, Plaintiff presumed that the details of the Draft LLC Operating Agreement, including the ownership percentages of the economic interest owners, were not settled. "Phillips also discussed the actual award amounts and informed [Dr.] Reed that the 'amounts seem low for some individuals' and may need to be adjusted up to secure the required diligence and effort of certain individuals ..." Compl. ¶ 78.

Plaintiff allegedly <u>assumed</u> the Draft LLC Operating Agreement was adopted[10] and was never informed that it was not. *Id.* ¶¶ 88-89. He does <u>not</u> allege that (1) he was ever told the Agreement was executed or adopted; (2) that he ever saw an executed version of it or any writing indicating it was adopted; (3) that the amount of capital contributed to fund the LLC was ever determined or the investment ever made; (4) that the very issue he raised regarding the percentages of economic interest ownership was ever addressed; and, mostly importantly, (5) that he himself ever signed it.[11]

---

[10] Plaintiff's "assumption" is contradictorily based on Reed Group's alleged frequent cancellations of board meetings and the absence of meeting notes. *Id.* ¶ 88. The failure to have board meetings or record minutes, however, would not make it more likely that the Draft Agreement was adopted and no one ever told Plaintiff it had been. *Id.*

[11] What Plaintiff does allege is: "All of this [the formation and alleged use of the LLC] was done by the Defendants to secure Phillips services over the next 18 months; while paying no compensation to Phillips for these services." Far from being deceived, in light of the fact that Phillips knew that the Draft Agreement was never finalized, if anything he assumed the risk that he would not be paid by allegedly continuing to provide services without even insisting that an agreement be finalized and the LLC be financed.

6

### 2. Allegations of an Equity Interest in the Reed Group

Plaintiff tries to use the Draft LLC Operating Agreement to assert an equity interest in the Reed Group. Any ownership interest Plaintiff asserts in the Reed Group is predicated on the viability of the Draft Agreement and on his alleged belief that the LLC was going to take over the business of the Reed Group. *See generally* Compl. The Draft Agreement makes no direct or indirect reference to the Reed Group or any of the Reed Group's assets or operations, a glaring omission if the LLC was intended to be its successor. Compl. Exh. A. Instead, the Draft Agreement simply sets out parameters for Dr. Reed, Grace and the Trust to contribute capital to the LLC without any reference to the source of the funding. *Id.*

Since Plaintiff cannot allege any firm basis for his belief that the LLC would take over the business of the Reed Group, he resorts, irrelevantly, to blackening the company's name with allegations and insinuations regarding a supposed history of inappropriately shifting Reed Group assets to different entities and ignoring corporate formalities. *See generally* Compl. Absent the rhetoric, Reed Group's true history is not only innocuous, but typical of a business of its age and size. At most, the company has unwound two restructurings over the course of its 26 years in business.[12] *See* Nagel Decl. at ¶¶ 15-18 (discussing some allegations). Far from abusing the corporate form, the Reed Group holds board meetings, has outside board members and does not intermingle personal and corporate assets.[13] *Id.* ¶ 15.

### 3. The "Joint Venture" Allegations

Plaintiff next alleges that he is a part owner of the ACOEM UMK by virtue of a "Joint Venture arrangement" that he allegedly formed with Reed. Compl. ¶ 98. Plaintiff does not

---

[12] Plaintiff also draws an inappropriately negative inference from the "dissolution" of the Reed Group. Compl. ¶ 63. Reed Group was dissolved for delinquent filings and reinstated when the filings were made. Once reinstated, a Colorado company is treated as if the dissolution never happened. Corwin Decl. ¶ 4.

[13] Plaintiff does not allege that personal and corporate assets were intermingled. He does allege that Dr. Reed and Grace used corporate funds to buy season tickets for a sports team and a vacation house. Complaint ¶¶ 30, 90. But no impropriety attaches to these actions, contrary to Plaintiff's insinuations. It is common knowledge that businesses often entertain clients by inviting them to games or retreats.

7

allege the circumstances surrounding the formation of the "Joint Venture" or a specific percentage of ownership interest agreed upon. *See generally,* Compl. ¶¶ 98-111. No such joint venture arrangement ever existed and the Reed Group never agreed that Plaintiff would have any ownership interest in the ACOEM UMK. Indeed, Plaintiff took an active role in negotiating the contract between the Reed Group and ACOEM, and while the contract sets out the rights and contributions of each party, it does not include an ownership interest or profit share for Plaintiff. Nagel Decl. ¶¶ 20-21, Exh. B. Plaintiff produced no contract or any other writing documenting any agreement between himself and the Reed Group regarding the ACOEM UMK. Nor could he.

Plaintiff claims he contributed cash and absorbed business-related expenses of the joint venture for a total investment of $80,000, but provides no documents supporting his alleged investment.[14] Compl. ¶¶ 11, 13. While Plaintiff did at one point lay out $18,000 in connection with the ACOEM UMK, Reed Group reimbursed him for that payment. Nagel Decl. ¶ 22, Exh. C, (print out from Reed Group's general ledger reflecting all payments to and from Plaintiff). Plaintiff neglects to mention that he regularly submitted his expenses to, and was reimbursed for his expenses by, Reed Group, including those related to the ACOEM UMK. *Id.* Since Reed Group's general ledger does not reflect any outstanding debt to Plaintiff, he either did not inform Reed Group of any other payments he may have made or received in connection with the ACOEM UMK or did not provide Reed Group with any evidence of the same.

### 4. Allegations that Plaintiff Was Promised a Share in Any Post-Sale Business

Plaintiff alleges that upon sale of the Reed Group he was promised an ownership interest in the "successor." Compl. ¶ 129. In support of this allegation, he describes a conversation with

---

[14] Reed Group's general ledger reflects no investments by Phillips and none of the defendants are aware of any such investment. Nagel Decl. ¶ 22, Exh. C. Even the unexecuted Draft LLC Operating Agreement, which Phillips places so much stock in, lists his capital contribution as $0.00. Compl., Exh. A at 29.

8

Reed Group's CFO, Judith Combs,[15] in which she "informed Phillips that she was aware that Dr. Reed had this objective [of giving equity in a successor entity] and saw it as a possible way" to compensate contributors. Compl. ¶ 130. Thus, Plaintiff acknowledges that the discussions of a successor interest were just that, talk of a possibility. Nothing was set or agreed upon.

The more direct "promise" on which Plaintiff allegedly relied was an ambiguous statement by Dr. Reed that the "more he could get (as an offer) the more he (Phillips) would receive" Compl. ¶ 120. By the very terms of this "promise," Plaintiff's receipt of compensation was contingent at the very least on Reed Group receiving an offer based on his efforts, which it did not. Although Phillips alleges that a potential buyer made an offer, it is clear from the Complaint that his allegations are based on a letter of intent (Compl. ¶¶ 119, 121), which is merely an expression of interest, does not constitute an offer and is not an agreement of sale. In any event, Reed Group did not engage in serious negotiations with any one potential buyer,[16] much less any buyer brought to it by Plaintiff (and he does not allege that the negotiations progressed beyond a letter of intent). Nagel Decl. ¶ 24. As of now, Reed Group is commencing a public auction rather than a one-on-one negotiation to sell. Id. ¶ 26.

Plaintiff claims that he deserves compensation because he drafted the Phillips Book, a document he allegedly used as a marketing tool to the investment community, and which he alleges is still in use by Reed Group. Nagel Decl. ¶ 22, Exh. E. But nothing came of any effort Plaintiff made "representing Reed Group" to the investment community, he did not meet the contingency set out in the vague "promise" he cites and Reed Group is not using the Phillips Book. At least since December 15, 2006, the Reed Group has used a new "book" it created after Phillips left. Id. ¶ 28. Exh. F.

---

[15] Ms. Combs, who is not a Reed Group shareholder, had no authority to offer Plaintiff an equity interest, and he does not allege that she did. Nagel Decl. ¶ 23.

[16] The negotiations with IBM (Complaint ¶ 132) were never consummated. Nagel Decl. ¶ 4, ftnt 1.

9

**C.    Plaintiff's General Claims of Entitlement to More Money**

Plaintiff generally claims that he performed services for Reed Group, yet received no compensation other than a monthly payment of $10,000, allegedly for a specific software IP project not at issue here.  To support his allegation that the entire $10,000 per month was solely for services unrelated to this action, he points to excerpts from documents that <u>he</u> wrote and which are not attached to the Complaint.  For example:

> Presley: … The $10,000 a month frees up enough time to let me
> address RGL IT issues and make it succeed, nothing else. I hope
> this is clear. I do appreciate your paying me to help on the IT. Ken

Compl. ¶ 17.  Notably absent is Dr. Reed's response to the quoted email.  If an email (or any other writing) from anyone at Reed Group stated that the monthly payments covered only one project, Plaintiff surely would have referenced it in his Complaint.

The fact that Plaintiff at times insisted upon, and received, payment for his services, indicates either that he did not insist upon payment for services for which he did not bill or that no one ever agreed to provide payment for the alleged other services.

## ARGUMENT

**I.    The Complaint Should be Dismissed because the Court Lacks Personal Jurisdiction over each Defendant**

This Court does not have personal jurisdiction over any Defendant; thus, Fed. R. Civ P. 12(b)(2) mandates dismissal.  Plaintiff alleges no grounds for personal jurisdiction over Nagel, the Trust, or the LLC, further, he does not allege that any of the remaining defendants solicit business within New York or any nexus between their alleged New York related activities and any of his claims, a prerequisite to subjecting them to suit in New York.  Where a defendant challenges personal jurisdiction, Plaintiff must make a prima facie showing that jurisdiction exists.  *See DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Conclusory allegations are not sufficient. *Indem. Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06

10

Civ. 0615 (BSJ), 2007 U.S. Dist. LEXIS 43567, at *13 (S.D.N.Y.). In addition, Plaintiff's factual allegations are not presumed true, but rather, can be challenged through the submission of facts beyond the pleadings. *Mantello v. Hall*, 947 F. Supp. 92, 95 (S.D.N.Y. 1996).

In a diversity case, courts first apply the Long Arm Statute of the State in which they sit. *Kronisch v. U.S.*, 150 F.3d 112, 130 (2d Cir. 1998). If the State's Long Arm Statute allows for the exercise of personal jurisdiction, the court must then assess whether that exercise comports with constitutional due process requirements. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). Here, Plaintiff does not set forth any specific factual allegation that confers personal jurisdiction over the Defendants. Therefore, the Complaint should be dismissed.

A.    **Standard for Establishing Jurisdiction in New York Over Non-Domiciliaries**

Under the New York Long Arm Statute, a court may exercise specific personal jurisdiction over a non-domiciliary where "(1) the non-domiciliary 'transacts business' in New York, and (2) the claim against the non-domiciliary arises out of that business activity." *Callen v. Taylor*, No. 05 Civ. 5713, 2006 U.S. Dist. LEXIS 43334, at *8 (S.D.N.Y.); N.Y. C.P.L.R. § 302(a)(1). Thus, a plaintiff relying on specific jurisdiction must show some articulable nexus between the cause of action and the alleged business transaction. *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970) (Section 302(a)(1) requires "a direct relation between the cause of action and the in-state conduct."). Plaintiff has not cited a single fact supporting such a nexus; and therefore, has failed to establish specific jurisdiction.

Where a court has general rather than specific jurisdiction over a defendant, that defendant is "subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts." *Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular, Inc.*, No. 05 Civ. 9994 (KMW), 2007 U.S. Dist. LEXIS 17163, at *7 (S.D.N.Y.). CPLR § 301 allows for general jurisdiction over an out of state defendant if the defendant is "doing business" or is physically present in New York. A corporation is "doing business" in

11

New York "if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Hoffritz for Cutlery v. Amajac*, 763 F.2d 55, 58 (2d Cir. 1985) (citation and quotation omitted). "Doing business" primarily means <u>selling</u> goods and services. *See, e.g., Dardana Ltd. v. Yugansknefegaz*, No. 00 Civ. 4633 (DAB), 2001 U.S. Dist. LEXIS 16078, at *6, 9 (S.D.N.Y.) (citation omitted) (vacated on other grounds). Here, there is no general jurisdiction over any of the Defendants; they do not <u>solicit</u> business in New York with any "permanence or continuity," as shown by their scant contacts with New York.

**B.    There is No Specific or General Jurisdiction in New York Over Any Defendant**

**Nagel, the Trust and the LLC.**  Plaintiff does not allege that Nagel, the Trust or the LLC have any contact with New York, much less that they transact business in New York related to the issues in the case.  Nagel is a Colorado citizen who owns no property in New York.  Nagel and the Trust do not conduct any business in New York and neither were involved in any of the events underlying this cause of action.  Similarly, the LLC has no connection to New York.  It is a Colorado Limited Liability Company that never operated as a business, never owned any assets, never hired any employees, never admitted any members, and never appointed any managers.  In short, it has been completely inactive and has never conducted any business in New York.  There are no actions upon which personal jurisdiction in New York over Nagel, the Trust or the LLC could be based.

**Dr. Reed and Grace.**  The Founders, husband and wife, are citizens of Colorado who own no property in New York and conduct no personal business in New York.  From time to time, they do travel to New York on Reed Group business, but these trips have no connection to the issues in this action (Plaintiff alleges no such connection), so they cannot be the basis for conferring specific jurisdiction.  Plaintiff alleges that, to his knowledge, Dr. Reed conducted negotiations with a prospective buyer in New York; this is insufficient.  Where the claims at issue do not have some sort of nexus to the alleged negotiations, specific personal jurisdiction

12

will not be conferred. *See Family Internet, Inc. v. Cybernex, Inc.*, 1999 WL 796177, at *7 (S.D.N.Y.). Plaintiff does not allege that he provided any services to Reed Group in New York or that Dr. Reed made any promises to Phillips while Dr. Reed was in New York. Similarly, the Founders cannot be subject to general personal jurisdiction based on contacts with the State taken on behalf of a corporation.[17] *See Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (N.Y. 1982).

**Reed Group.** As with the other defendants, there is no cognizable nexus between any of the issues in the case and any actions Reed Group took in New York. Plaintiff's allegations of jurisdiction over Reed Group are based on the one negotiation between Dr. Reed and a potential purchaser (addressed above) and the Reed Group's Albany call service center. Compl. ¶¶ 29, 132. Plaintiff alleges no connection between his claims and the activities of the service center; therefore, there is no specific jurisdiction over Reed Group.

Similarly, there is no general jurisdiction over Reed Group because the service center does not solicit business. Whether a defendant "transacts business" in New York as required for general jurisdiction is a fact-intensive inquiry, depending on the "totality of the circumstances." *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004). Plaintiff must show that the Reed Group's contacts are continuous and systematic in order to sustain jurisdiction. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). A "solicitation plus" standard must be met; the court will only exercise general jurisdiction if solicitation of business within the forum state is "substantial and continuous, and defendant[s] engage[] in other activities of substance in the state ...." *Landoil Res. v. Alexander & Alexander Serv.*, 918 F.2d 1039, 1043-44 (2d Cir. 1990). Business activities include the sale of goods, maintenance of a sales office, employment of sales representatives, and advertising. *Dardana*

---

[17] While the principals of corporations may be subject to specific jurisdiction based on actions taken in their business capacity, they are not subject to general jurisdiction for those actions. *See, e.g., Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) (rejecting the fiduciary shield doctrine finding specific jurisdiction over principals for actions taken for corporation and differentiating general jurisdiction.)

13

*Ltd.*, 2001 U.S. Dist. LEXIS 16078 (vacated on other grounds). Additional factors to be considered are "whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests." *See Klonis v. National Bank of Greece, S.A.*, 2007 WL 959257 (S.D.N.Y. 2007) (citation omitted). Thus, having an office in the state alone is not dispositive. "Significantly higher" contacts with the forum state are required for general jurisdiction than for specific jurisdiction. *See Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984) (discussing constitutional due process requirements for the exercise of general jurisdiction).

Plaintiff describes the service center's operations as "discussing sensitive healthcare issues and approving and denying thousand [sic] of employee disability claims" and "employing over 50 workers in NY."[18] Compl. ¶ 29. Plaintiff does <u>not</u> say that the call service center solely services existing Reed Group clients, has no sales people, has no New York bank accounts, owns no real property in New York,[19] and does not solicit any business (in New York or elsewhere). As the Reed Group does not solicit business in New York, Plaintiff has not met the "solicitation plus" test necessary to establish general jurisdiction.

## II.    The Southern District of New York is Not a Proper Venue

The Complaint should be dismissed because venue is not proper in the Southern District of New York. Fed. R. Civ. P. 12(b)(3); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981) ("dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific

---

[18] Without basis, Plaintiff directs these allegations to Dr. Reed and Grace. The center in Albany is part of the Reed Group, not a personal side business.

[19] Reed Group does rent office space in Albany but does not own any real property in New York. Nagel Decl. ¶ 6; *Wong v. Slotkin*, 154 Misc. 2d 655, 657 (N.Y. Misc. 1992) (where the plaintiff failed to make a claim of personal jurisdiction against the defendant for his ownership in property, the court would only assess the claim of jurisdiction actually pled by the plaintiff, which was the transaction of business within New York).

14

reasons of convenience supporting his choice."). Where the defendant challenges venue, it is the plaintiff's burden to establish the propriety of his venue choice. *ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F. Supp. 2d 274, 276 (S.D.N.Y. 2000). Plaintiff's concession that no party resides in New York and that all defendants live in Colorado, Compl. ¶¶ 2-7, eliminates two of the three venue options, *see* 28 U.S.C. § 1391(a)(1) and (3). Therefore, Plaintiff must show that a substantial part of the events underlying the claim occurred in the Southern District. 28 U.S.C. § 1391(a)(2). He has not alleged that a single relevant event occurred in the Southern District, let alone a substantial portion of the events. Plaintiff's conclusory allegation that "this is the district in which a substantial portion of the events giving rise to Plaintiff's claims occurred" (Compl. ¶ 10) is legally insufficient. *Project 74 Allentown, Inc. v. Frost*, 770 F. Supp. 207, 208-209 (S.D.N.Y. 1991) (venue improper where "[p]laintiff's allegations [we]re conclusory statements without specific factual support").

In the event the Court declines to dismiss any portion of the Complaint, it should, at a minimum, transfer venue to the District of Colorado. A district court may transfer a civil action to any other district where (a) the action may have been brought, (b) for the convenience of parties and witnesses, (c) and in the interest of justice. 28 U.S.C. §1404(a). In addition, in determining whether to transfer an action courts consider the locus of operative facts, ease of access to sources of proof, availability of process to compel witnesses to appear at trial, the weight to be accorded the plaintiff's forum selection, calendar congestion, and the familiarity of the forum with the substantive law of the case. *U.S. Fidelity & Guar. Co. v. Rep. Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). All of these considerations heavily favor transfer to the District of Colorado.

The people and the documents in this case are centered in Colorado. The vast majority of potential witnesses, all five defendants, and their documents reside in Colorado, while no

witnesses and no parties reside in the Southern District.[20]  Compl. ¶¶ 2-5, 7; Nagel Decl. ¶¶ 4-14. Virtually everyone involved will be inconvenienced if this case remains in New York. *Berman v. Informix Corp.,* 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) (convenience of witnesses most important fact in transfer); *Hernandez v. Graebel Van Lines,* 761 F. Supp. 983, 989 (E.D.N.Y. 1991) (strong consideration that all witnesses but for plaintiff and his two treating physicians resided in district to which transfer was sought).  By contrast, transfer to Colorado will not greatly inconvenience Plaintiff because, as a Massachusetts resident (Compl. ¶ 1), he will have to travel regardless of whether transfer is granted.  Little deference is given to Plaintiff's venue choice where, as here, it is not his home forum.  *U.S. Fidelity & Guar. Co.*, 800 F. Supp. at 1082.

Plaintiff's choice of forum is also given less weight when "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." (*Fuji Photo Film Co. v. Lexar Media, Inc.,* 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006) (quotation and citation omitted)); instead, preference is given to the forum in which the events giving rise to the claim occurred, in this case Colorado.  *ZPC 2000, Inc.*, 86 F. Supp. 2d at 279.  Here, Plaintiff fails to allege even one relevant event that occurred in the Southern District that gave rise to his claims. *See Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (transfer granted when only connection between lawsuit and chosen district was fact that defendant did business there).  By contrast, the vast majority of services upon which Plaintiff bases his claims were performed in Colorado or Massachusetts (not New York) and allegedly accepted by Defendants in Colorado.  Nagel Decl. ¶ 13.

Colorado is also the forum most familiar with the applicable law[21] and has a much less congested docket, with approximately half the cases per active judge than in the Southern

---

[20] Presumably, the District of Colorado will be better able to compel the attendance of witnesses to testify at trial.
[21] As addressed *infra* in Section III.A, conflict of law rules require this Court to apply Colorado substantive law where New York law differs because Colorado is the jurisdiction with the most interest in the case.

16

District. Corwin Decl. ¶ 5, Exhs. C, D; *Laumann Mfg. Corp. v. Castings USA, Inc.*, 913 F. Supp. 712, 721-722 (E.D.N.Y. 1996) (considering familiarity with the applicable law); *Colida v. Panasonic Corp. of N. Am.*, 2005 U.S. Dist. LEXIS 27785, at *11 (S.D.N.Y.) (considering calendar congestion).

As Plaintiff chose a forum without any conceivable connection to the action the case should be dismissed for improper venue. In the alternative, to the extent that this case is not dismissed in its entirety, any remaining claims should be transferred to Colorado. Colorado has the greatest interest in this case, is the natural forum as the locus of all events relevant to the underlying issues and is, by far, the most convenient forum for the parties and witnesses.

**III.    The Complaint Should be Dismissed Because Plaintiff Has Failed to State a Claim**

**A.    Standard of Review for a 12(b)(6) Motion to Dismiss and Applicable Law**

Under Fed. R. Civ. P. 12(b)(6), where it appears that "plaintiff can prove no set of facts in support of his claim which would entitle him to relief," dismissal is warranted. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957)). While the Court must, for purposes of a motion to dismiss for failure to state a claim, accept a complaint's factual allegations as true, and draw reasonable inferences in a plaintiff's favor (*see Lupien v. Citizens Utilities Co.*, 159 F.3d 102, 104 (2d Cir. 1998)), conclusory legal concepts that are pled without supporting facts are not entitled to such deference. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). Moreover, while Courts generally must limit their analysis to the facts alleged, "[i]n considering a motion to dismiss, this Court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Ohio Savings Bank v. Manhattan Mortgage Co., Inc.*, 455 F. Supp. 2d 247, 251 (S.D.N.Y. 2006) (citations omitted).

17

A federal court sitting in diversity must apply the choice of law rules of the forum state. *See Totalplan Corp. of Am. v. Colborne,* 14 F.3d 824, 832 (2d Cir. 1994) (citation omitted). Under New York choice of law rules courts first determine whether there is an actual conflict between the laws of the jurisdictions involved, *Matter of Allstate Ins. Co. (Stolarz)*, 597 N.Y.S.2d 904 (1993), and only consider which law to apply if there is a conflict.   If there is no conflict, the Court will apply New York law. "In the absence of substantive difference ... a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (citations omitted).   Where the laws conflict, courts apply the law of the jurisdiction with the greater interest in the litigation. *Curley v. AMR Corp.*, 153 F.3d 5, 14-15 (2d Cir. 1998) (citations omitted); *Chrysler Capital Realty, Inc. v. Grella*, 942 F.2d 160, 162 (2d Cir. 1991) (citations omitted).  As outlined in Section III.A, New York has little or no connection to this case and the vast majority of events occurred in Colorado; therefore, where the laws conflict, the claim will be analyzed under Colorado law.

**B.      Plaintiff Cannot Recover Against The Individual Defendants Personally**

Where Plaintiff fails to plead any facts tying a defendant to the claims asserted, the claims as to that defendant must be dismissed. *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002).  Here, Plaintiff makes no allegations as to Nagel (or the Trust) except that he attended a board meeting.  Such allegations fail to give any notice of the basis of the claims against them, thus they must be dismissed. *Conley*, 355 U.S. at 46.

Similarly, Plaintiff alleges no facts that would allow the Founders to be held personally liable for their actions taken as corporate officers.  Plaintiff alleges that "[t]he Defendants [sic] behavior exhibits certain elements of the alter ego theory of liability and should permit Plaintiff to Pierce the Veil."  Compl. ¶ 28.  Colorado courts consider that "[c]orporate veils exist for a reason and should be pierced only reluctantly and cautiously." *Sipma v. Massachusetts Cas. Ins.*

18

Co., 256 F.3d 1006, 1010 (10th Cir. 2001) (citations omitted).  Reed Group exists in good standing; the Founders are "officers and shareholders of [Reed Group] and [are] authorized to act on [its] behalf"; and Plaintiff was "given notice that defendants had authority to act on [Reed Group's] behalf." Nagel Decl. ¶¶ 5,10; *Straub v. Mountain Trails Resort, Inc.*, 770 P.2d 1321, 1323 (Colo. App. 1988).

Moreover, to pierce the veil, Plaintiff would have to show that the Reed Group was undercapitalized.  *Id.*  But, "by Plaintiff's estimate," Reed Group was worth $50 million in 2006.  Compl. ¶14.  Plaintiff has thus failed to show either that Reed Group is "a mere instrumentality" for the Founders' affairs or that "adherence to the doctrine of corporate entity would promote injustice." *Gude v. City of Lakewood*, 636 P.2d 691, 697 (Colo. 1981).

## C.    The Draft Unexecuted and Incomplete Operating Agreement is Not a Contract

Plaintiff's claim for breach of contract must be dismissed because the only contract alleged was never finalized, never executed and is clearly marked "DRAFT" on its cover.[22]  In both Colorado and New York, a contract cannot be formed absent a "meeting of the minds" on its central terms.    *See Express Industries and Terminal Corp. v. New York State Dept. of Transportation*, 93 N.Y.2d 584, 589 (1999); *Winston Fin. Group, Inc. v. Fults Mgmt. Inc.*, 872 P.2d 1356, 1358 (Colo. App. 1994).    The parties never agreed on the two key financial components of the Draft Agreement: the capital contribution of the members and the percent ownership interest of the economic interest owners.  Compl. ¶ 78, Exh. A.   Moreover, the Draft Agreement explicitly requires that it be first adopted by the LLC's members and then signed by the members and the economic interest owners.  Compl., Exh. A at 28.  As it was never adopted or signed, by its own terms it is not enforceable.  *Id.*, Exh. A.  *In re Marriage of O'Brien*, 759 P.2d 826, 828 (Colo. App. 1988) (refusing to enforce purported agreement because it was not

---

[22] As "contract law is not at its core diverse, nonuniform [or] confusing," *American Airlines, Inc. v. Wolens*, 513 U.S. 219 n.8 (1995), it is not necessary to distinguish between New York and Colorado law—under the contract law of either jurisdiction, Plaintiff's claim for breach of contract fails because there was no valid contract.

19

signed); *R.G. Group v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (citations omitted) ("If parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs.").

Plaintiff has not alleged an oral contract. Any such allegation, however, would fail. Once parties have indicated an intent that an agreement be reduced to writing that was later abandoned, it will not be assumed that an oral agreement superseded that manifest intent. Moreover, the Statute of Frauds of both New York and Colorado state that an agreement must be in writing which "by its terms is not to be performed within one year from the making thereof." N.Y. Gen. Oblig. Law § 5-701 (McKinney 2001); C.R.S.A. § 38-10-112 (1999). Plaintiff has alleged that he "expended approximately 5800 hours" over a four-year period. Compl. ¶¶ 11, 13. Assuming *arguendo* that any oral agreement was reached, the contemplated thousands of hours could not have been completed within a year and the Agreement therefore would be invalid because there is no writing.[23]

**D.    The Economic Loss Rule Bars Plaintiff's Claims of Negligent Misrepresentation**

Plaintiff alleges only economic harm (*see, e.g.,* Compl. ¶¶ 11, 111, 128) stemming from various alleged promises that he would receive compensation for his services[24] and, therefore, cannot recover under a claim for negligent misrepresentation. In *BRW, Inc. v. Dufficy & Sons, Inc.*, the Colorado Supreme Court held: "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." 99 P.3d 66, 72 (Colo. 2004), (internal quotations

---

[23] Similarly, any an oral agreement to form the alleged Joint Venture (Compl. ¶ 98) would be invalid because it could not be completed within one year. According to Plaintiff, the design phase of the project alone lasted "[f]or over a year from June 2004 thru [sic] October 2005." (Compl. ¶ 104). As an alleged joint venturer, Phillips expected to participate not only in the design of the product but in "expand[ing] the value of the enterprise," (*id.*) and perpetually sharing in any profits generated by the intellectual property.

[24] In support of his claim for negligent misrepresentation Phillips also alleges that Dr. Reed and Grace used the corporate identities of Reed Group and the LLC interchangeably to evade any financial obligations owed to Plaintiff based on alleged promises of compensation. Compl. at 32-33.

20

omitted).[25]   Since Plaintiff described at length his extensive involvement in Reed Group, he necessarily "had the opportunity to allocate the risks that might occur [by entering into an explicit written agreement for compensation] ... but failed to do so." *Id.* at 73. A claim for negligent misrepresentation also cannot be based on the promise to do something at a future time; therefore, to the extent that Plaintiff's claim is based on promises to provide him with an equity interest at some future time, it must also fail. *Branscum v. American Comm. Mutual Ins. Co.*, 984 P.2d 675, 680 (Colo. App. 1999).

**E.    Plaintiff Does Not Allege an Essential Element of Quantum Meruit and Unjust Enrichment -- The Value of His Alleged Services, Mandating Dismissal**

Plaintiff's claims for quantum meruit and unjust enrichment must be dismissed because he failed to allege any reasonable value for services allegedly provided—an essential element of those claims in both New York and Colorado. *See Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 389 (1st Dep't 2002); *Martin H. Bauman Assoc. v. H&M Int'l*, 567 N.Y.S.2d 404, 408 (1st Dep't 1991) (dismissing claim where the Complaint was "entirely devoid of any indication of ... the reasonable value of any services which [plaintiff] may have performed."); Colo. Jury Instr., Civil 30:14 (4th ed); *see also Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo. 1982). Plaintiff asserts that he "performed services ... with a reasonable expectation of compensation for said services," but does not provide any basis for valuing these services. Compl. at 34, ¶ 2.[26]

---

[25] In New York, by contrast, no independent duty beyond contractual privity is required to support a claim of negligent representation that alleges only economic loss. *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424 (1989). As there is an apparent conflict in the laws, Colorado law applies. If the Court were to apply New York law, Plaintiff's claim for negligent misrepresentation would still fail because Plaintiff has not established contractual privity with any defendant (*see* Section IIIC, *supra*) or any fiduciary relationship between the parties (*see* Section IIIG, *infra*). *See Parrott v. Coopers & Lybrand LLP*, 702 N.Y.S.2d 40, 44 (1st Dep't 2000) (requiring privity); *DFP Mfg. Corp. v. Northrop Grumman Corp.*, 1999 WL 33458384 at *10 (E.D.N.Y. 1999) (recognizing fiduciary relationship as a prerequisite to a claim for negligent misrepresentation).
[26] Plaintiff's incredible assertion that he is responsible for a 5000% increase in the value of Reed ("by Plaintiffs [sic] estimation"), simply cannot be given credence. Compl. at 34, ¶ 5.

21

Even if Plaintiff successfully alleged all elements of quantum meruit and unjust enrichment, these claims would fail, because he alleged the existence of valid contract to which he wishes to bind defendants. *See* Section C, above. Recovery for quantum meruit and equitable estoppel is precluded where plaintiff sues on an express contract that covers the same subject matter. *De La Cruz v. Caddell Dry Dock & Repair Co., Inc.*, 804 N.Y.S.2d 58, 60 (1st Dep't 2005); *Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski*, 789 N.Y.S.2d 508, 510 (2d Dep't 2005); *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. App. 2004); *Scott Co. v. MK-Ferguson Co.*, 832 P.2d 1000, 1002 (Colo. App. 1991), *cert. denied* (1992).

**F.    The Alleged "Promises" are Not Actionable and Plaintiff Could Not Have Reasonably Relied Upon Them**

Plaintiff's attempt to enforce three "promises"—the promise of "an equity share in [Reed Group] and [the LLC]"; a "promise in the matter of the ACOEM UMK product"; and a promise of a share in a future "liquidity event" of the Reed Group—through his claim for promissory estoppel must fail, as the alleged promises are too vague to be actionable and he could not have reasonably relied upon them. *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1325 (10th Cir. 2005) (vague promises are not actionable under promissory estoppel); *Lufti v. Brighton Comm. Hosp. Assoc.*, 40 P.3d 51 (Colo. App. 2001) (dismissing claim for failing to establish reasonable reliance); *see also Wilkerson v. State*, 830 P.2d 1121, 1125 (Colo. App. 1992).[27] A court will not enforce a promise unless it is "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Soderlun v. Public Service*

---

[27] The elements of promissory estoppel in New York and Colorado differ. While Colorado will enforce a promise to ward off a potential injustice, *Patzer v. City of Loveland,* 80 P.3d 908, 912 (Colo. App. 2003), New York courts only apply promissory estoppel where there is an actual "injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). Under either law, Plaintiff's claim fails. In New York, "rights proposed in draft agreements"—such as the one upon which Plaintiff attempts to ground his ownership of equity in Reed Group, LLC—are not "clear and unambiguous promise[s]" and cannot be enforced. *Totalplan*, 14 F.3d at 833. In addition, "the mere failure to obtain an uncertain prospective benefit does not rise to a sufficient level of unconscionability to warrant the application of the doctrine of promissory estoppel." *Country-Wide Leasing Corp. v. Subaru of America, Inc.*, 520 N.Y.S.2d 24 (2d Dep't 1987). As discussed above, Plaintiff by his own admission was never promised anything more than an indeterminate equity interest at some point in the future.

*Co. of Colorado*, 944 P.2d 616, 620 (Colo. App. 1997). None of the alleged promises specify the most important term, what <u>percent</u> ownership is being promised, i.e. the "price" of the services rendered.

Moreover, whether the reliance was reasonable depends on the sophistication of the Plaintiff. *See Mariani v. Rocky Mountain Hospital and Medical Svc.*, 902 P.2d 429, 435-436 (Colo. App. 1994) (noting, in denying promissory estoppel, that plaintiff's "training, education, and capability established her knowledge and understanding of her employment status," making her reliance on her employer's alleged promises unreasonable). As an "an independent investor, developer and manager of businesses that are focused on [the industry in which Reed Group operates]" (Compl. ¶ 11), Plaintiff's contention that he reasonably relied on unwritten promises that did not specify the amount of his compensation is untenable.

Moreover, the promises alleged apparently are Plaintiff's statements of his wishes rather than promises stemming from the Reed Group or its Founders. For example, to support the alleged promise of an interest in the ACOEM UMK, Plaintiff quotes himself at length, but only refers to one writing by Dr. Reed (or any other defendant): "Will work amicably with you going forward to see that we both come out ok." Compl. ¶ 108. Vague assurances to "take care" of someone are not actionable. *See Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 522 (Colo. App. 2006) (citing *Ames v. Sundance State Bank*, 850 P.2d 607, 610 (Wyo. 1993).

Plaintiff admits that the alleged promise that he would receive a portion of the proceeds in the event of a sale was expressly conditioned upon the actual sale of the company, an event which has not occurred.[28] *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995) (refusing equitable estoppel where the promise was conditional). Hence, by the very terms of the "promise" as stated by Plaintiff, there is nothing for the court to enforce. Plaintiff similarly admits that any

---

[28] "On several occasions, Reed made it clear to Phillips the [sic] upon any liquidity event … Phillips would receive a portion of the proceeds." Compl. at 35, ¶ 6.

23

promise to compensate him in connection with the creation of the Phillips Book and "representation" of the Reed Group to the investment community was also conditioned on an event that did not occur: the "more he could get (as an offer) the more he (Phillips) would receive" Compl. ¶ 120.[29]

### G.    Plaintiff is Owed No Fiduciary Duty

There can be no breach of fiduciary duty where there was no duty to begin with; therefore, Plaintiff's claim for breach of fiduciary duty must be dismissed. *MDM Group Assoc., Inc. v. CX Reinsurance Co., Ltd.*, 2007 WL 528800, at *6 (Colo. App.). Under Colorado law, to establish that a fiduciary duty exists, Plaintiff must either demonstrate the existence of a per se fiduciary relationship or a confidential relationship giving rise to a fiduciary duty. *First Nat. Bank of Meeker v. Theos*, 794 P.2d 1055, 1060-61 (Colo. App. 1990).

Plaintiff claims he is owed a fiduciary duty as a board member of the LLC and the Reed Group and as an economic interest owner of the LLC. Compl. at 36, ¶ 2. While board members owe a duty to the company they serve, that duty is not reciprocal, it flows in one direction. *Cloud v. Assoc'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 439 (Colo. App. 1992); *MDM Group Assoc., Inc.*, 2007 WL 528800 at *6. Hence, Plaintiff cannot ground a breach of fiduciary duty claim on his service as a board member.

---

[29] Plaintiff merely alleges that he secured a letter of intent from a potential buyer, not an offer to buy Reed Group. Compl. ¶ 119. The letter of intent, attached to Phillips' TRO motion, indicates that it is "not intended to be legally binding." See Nagel Decl. 25, Exh. D. Thus, the letter of intent is not a binding offer. *See Lewis v. Pilot Corp.*, 46 Fed.Appx. 900, 902 (10th Cir. 2002).

Plaintiff's attempt to base a breach of fiduciary duty claim on his alleged status as an economic interest owner of the LLC similarly must fail. As discussed in Section IIIC, *supra*, the Draft LLC Operating Agreement is not a binding contract and, therefore, Plaintiff never became an economic interest owner in the LLC.

Likewise, Plaintiff cannot establish that there was a confidential relationship giving rise to a fiduciary duty between himself and any defendant. To establish such a relationship, Plaintiff must show he justifiably reposed a special trust or confidence in one of the defendants and that they either invited or ostensibly accepted the trust imposed. *First Nat. Bank of Meeker v. Theos*, 794 P.2d at 1061. Plaintiff's unsupported statement that "Defendants had a special relationship of trust and confidence with [Plaintiff]," is insufficient. Compl. at 33, ¶ 11. Far from establishing that Reed Group (or the other defendants) owed Plaintiff a fiduciary duty, the facts alleged indicate that Plaintiff was a consultant to the Reed Group or in the case of his "interfac[ing] with the investment community" an agent of the Reed Group. (Compl. ¶ 68). In either case, it would be Plaintiff who owed a one-way fiduciary duty to the Reed Group, not the reverse. *MDM Group Assoc., Inc.*, 2007 WL 528800 at *6.

## CONCLUSION

For the foregoing reasons, defendants respectfully request pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) that the Court dismiss the Complaint in its entirety, or in the alternative, transfer any portion of the case not dismissed to the District of Colorado.

Dated: July 25, 2007

GREENBERG TRAURIG, LLP

Leslie D. Corwin (LC-0254)
Rachel Izower (RI-0050)
200 Park Avenue
New York, New York 10016
Tel.: (212) 801-9200
*Attorneys for Defendants*
25