# EXHIBIT A

**Kenneth F, Phillips, Pro Se Plaintiff**

189 Bacon Street, Natick Massachusetts 01760

(508) 655-3307

**United States District Court**

**Southern District of New York**

|  |  |
|---|---|
| Kenneth F. Phillips ) | **07-CV-3417 (DAB)** |
| ) | |
| *Plaintiff* ) | |
| **V.** ) | |
| Reed Group, Ltd. ) | |
| Reed Group, LLC ) | **Verified Complaint and Jury Demand** |
| Stacey Grace ) | |
| Presley Reed ) | |
| Peter B. Nagel, Trustee of the ) | |
|    Presley Reed 1999 Family Trust ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

Kenneth F. Phillips, ("Phillips" or "Plaintiff"), files this Complaint on his behalf against

Defendants Reed Group Ltd.( "RGCORP"), Reed Group, LLC ("RGLLC"); Stacey Grace

("Grace"), and Presley Reed ("Reed)" collectively the ("Defendants") and Peter B. Nagel,

Trustee of the Presley Reed 1999 Family Trust ("Nagel") and alleges as follows:

**PARTIES, JURISDICTION**

    1. Phillips, at all relevant times, is an individual and a citizen of Massachusetts residing and

at 189 Bacon Street, Natick Massachusetts 01760.  Phillips was a Board Director of Reed Group

Holdings. ("RGH Singapore"), RGCORP and RGLLC.

    2. RGCORP is a Colorado Corporation and maintains its principal place of business in 10155

Westmoor Drive, Suite 210 Westminster, CO 80021 is a business process outsourcer providing

publications, software and services that streamline employee absence operations for employers.

    3. RGLLC is a Colorado Limited Liability Corporation and maintains its principal place of

business in 10155 Westmoor Drive, Suite 210 Westminster, CO 80021 and has two members

(Reed and Grace) both of whom are individuals domiciled in Colorado.

4. Reed is a citizen of Colorado and Chairman and CEO of RGCORP, a Member of RGLLC and resides at 999 8th Street Boulder, Colorado. 80302-7103

5. Grace is a citizen of Colorado and President of RGCORP, a Member of RGLLC and resides at 999 8th Street Boulder, Colorado. 80302-7103

6. Reed and Grace are husband and wife.

7. Nagel is a Trustee of the Presley Reed 1999 Family Trust; 999 Eighteenth Street, Suite 3000 Denver, Colorado 80202 and is a citizen of Colorado. The trust owns approximately 30% of RGCORP. Nagel is also on knowledge and belief outside counsel to RGCORP and RGLLC.

8. This action was removed Pursuant to 28 U.S.C. § 1441 et seq. from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York upon complete diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

9. The court has personal jurisdiction over the Defendants because, in accordance with Sections 301 and 302 of the New York Civil Practice Law and Rules, they transacted business within the State of New York and/ or contracted to supply goods and/or services in the State of New York. The Defendants are involved extensively in business in New York, not occasionally or casually, but with a fair measure of permanence and continuity. Defendants have purposely availed themselves of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws. Consequently, in view of the foregoing nature of the Defendants activity, it is reasonable and fair to require the Defendant to conduct a defense in the State of New York.

10. Venue properly lies in this Judicial District pursuant to 28 U.S.C. § 1391(a) (2) as this is the district in which a substantial portion of the events giving rise to Plaintiff's claims for relief occurred.

07-cv -3417 RGL SDNY Complaint  Ver 1.0     2

## SUMMARY OF THE LAWSUIT

11. This lawsuit arises out of a 4 year business relationship between Plaintiff and Defendant. Plaintiff is an independent investor, developer and manager of businesses that are focused on the employee benefits industry. Defendants and the entities involved is a business process outsourcer providing publications, software and services that streamline employee absence operations for employers. Plaintiff and Defendants agreed that Phillips would help Defendants improve the business, develop new products and monetize their investment via a sale, merger or some other liquidity event. In lieu of direct current payment for these services, at Defendants request in order to preserve cash and make more capital available to the business; Plaintiff and Defendants agreed that Plaintiff would be compensated as an owner, having an equity share in the enterprise, rather than as a paid worker. Plaintiff performed all of his obligations, expending approximately 5800 hours of direct labor, $30,000 in capital and absorbed $50,000 in business related expenses over a 4 year period. Defendants have paid no compensation to Plaintiff and have now refused to honor their agreements while claiming no compensation is due to Plaintiff.

## INTRODUCTION

12. This action is brought by the Plaintiff arising out of Defendants:

    a. Denial of Phillips status and rights as an Economic Interest Owner of RGLLC,

    b. Denial of Phillips entitlement to an equity share in RGCORP,

    c. Denial of Phillips rights to ownership and compensation as a Joint Venture partner of RGCORP in the creation of a new product and the

    d. Denial of Phillips rights to compensation in connection with his services provided in developing a successful investment strategy and obtaining favorable result for RGCORP with the private equity investment community.

13. Over a 4 year period from September 12, 2002 thru October 24, 2006 Phillips provided significant service to Defendants, totaling over 5800 man hours of effort and contributed approximately $30,000 in capital and absorbed in excess of $50,000 in related expenses as an advisor, Board Member and Joint Venture partner. These services were provided at the request of the Defendants and were provided primarily to RGCORP and to a lesser degree to its predecessor RGH Singapore and planned successor RGLLC. Upon information and belief Phillips efforts helped to generate over $50 Million in value for Defendants while receiving no compensation for his services.

14. The RGCORP Net Equity value increased from approximately $921,380 in Calendar Year 2003 to approximately $50 Million Dollars in Calendar Year 2006; by Plaintiff's estimate. A significant portion of this value was added by the activities and services provided by Phillips at the direct request of the Defendants and based on Phillips reliance on Defendants promise of an equitable share of the growth he created. This share was represented by Defendants to Phillips to be:

      a.  a percentage ownership in value and profits of the enterprise;

      b.  a share of the value and revenue of a new guideline product he helped to create;

      c.  a share in the proceeds of a liquidity transaction involving an external investment

<u>DETAILS OF PHILLIPS COMPENSATION</u>

15. Defendants paid no compensation to Phillips in connection with any of the claims made pursuant to this action. Defendant did pay compensation to Phillips for a completely distinct and separate activity to assist Defendant in the development of a Software IT Infrastructure ("Software IT") for the Defendants.

16. Phillips provided services to Defendants for approximately 45 months, from January 2003 to October 2006.

    a.  For the first 30 months that Phillips provided services to Defendants (from January 15, 2003, when Phillips joined the Board, until July 1, 2005). Phillips received absolutely no compensation <u>for any reason from RGCORP</u>.

    b.  During the next 15 months from approximately July 1, 2005 thru Sept. 30, 2007; Phillips received no compensation for any matter that is the subject of this action. Phillips did receive compensation from the Defendant for services in connection with a completely different activity.

    c.  Beginning on approximately July 1, 2005 thru Sept 30, 2006 Phillips did receive compensation for providing direct consulting to the Defendant on a specific Software IT effort that has no connection to the services or relief sought in this action. The payments of $10,000 per month for approximately 15 months (from July 1, 2005 thru Sept 30, 2006) equal a total of $140,000 from RGCORP.

17. The documentation that this $140,000 payment was to be compensation for Phillips performing a very specific Software IT task, and was payment for that task only, is very clear and is outlined in several writings, invoices presented, checks received and other communications that Phillips had with Defendants. After a discussion between Phillips and Reed, during which they discussed the payment, the arrangement and the separate nature of the Software IT assignment Phillips emailed Reed on Friday, June 10, 2005 "Subject: The Payment"

"Presley: Just so we don't get going sideways and have a misunderstanding. I had allocated some time to do work on the RGL IT project.... As I went thru the .Net implementation it became apparent to me that I will have to spend 50% 0f my time working with Mike and Eli because the natural helpers (Dave and Gayle etc.) can be of little or no help and the concept is

being received with such skepticism and misunderstanding that I have to drive it harder.  The $10,000 a month frees up enough time to let me address RGL IT issues and make it succeed, nothing else.  I hope this is clear.  I do appreciate your paying me to help on the IT.    Ken"

18.  All of the monthly invoices presented to RGCORP were specific to the IT project and clearly stated such. For example, the September 2006 invoice stated clearly:

"For Services rendered in connection with the development of an IT infrastructure for the firm. Delivered between September 1, 2006 and September 30th, 2006." "Amount:  $10,000"

19. After Reed dissolved the Board on Oct.24, 2006 without notice or discussion; there was no consideration of Plaintiff's claims until Reed referred Phillips to Attorney David Palmer. Phillips contacted Palmer on or about February 1, 2007.

20. After extensive Settlement Communication subject to Fed. R. Evid. 408 and C.R.E. 408 with Atty. Palmer, Defendants had authorized Palmer to communicate to Phillips in a letter dated March 16, 2007 that "I am authorized to inform you that your claim to such a payment is not viable in our view."

21. By this action, Phillips seeks equitable relief and damages against Defendants for breach of contract, negligent misrepresentation, unjust enrichment, quantum meruit, promissory estoppel and breach of fiduciary duty. This action is to recover these amounts and any related costs and expenses incurred in the recovery.

## BACKGROUND FACTS

### CORPORATE STRUCTURE AND BACKGROUND

22. The various corporate structures created, dissolved, reinstated, renamed and maintained by this enterprise create an environment that encourages confusion often making it difficult to see just what activities have occurred, done by what entity and to what purpose.

23. The names of the Defendants entities are often used interchangeably and often incorrectly

by Reed, Grace and even their own experts. For example, in all of the year 2005, Reed Group

Ltd. did not exist by that name but it was used on TENS of thousands of pieces of

correspondence, advertising, checks and even in legal and regulatory contexts such as filings and

copyright notice.

24. The actual legal name, Reed Companies Ltd., effective all of 2005 was never on

information and belief used in commerce; outside a single filing with the Sec. of State of

Colorado on December 20, 2005.

25. The Defendants have become very proficient in using their dominant control to create and

rename entities, moving the central entity, RGCORP (Reed Group Ltd.), in and out of active or

dissolved status, renaming it, combining it with another entity and then dissolving that entity as

was done in 2000.

26. This name changing and dissolving and reinstating of entities is done in order to preserve

complete control and ownership of the Defendants 100% equity in RGCORP; while holding out

equity offers to others in another entity, with a similar name. This entity, in which equity was

offered, would be nearly worthless, in spite of its operational posture as the successor to very

valuable entity RGCORP.

27. This was exactly the situation at hand where Defendants created a new entity RGLLC,

then provided an Operating Agreement which provided equity to many persons, all the while

retaining 100% of RGCORP.

28. The Defendants behavior exhibits certain elements of the alter ego theory of liability and

should permit Plaintiff to Pierce the Veil. The Defendants, 100% owners of RGCORP and the

only Members of RGLLC have exercised dominating control of both entities to the extent that

RGCORP and especially RGLLC are instrumentalities of Reed and Grace. There is a complete

overlap in ownership, where Reed and Grace are at once owners, officers, directors, members.

29. In terms of careless governance, even though Reed and Grace conduct significant business

in New York State; discussing sensitive healthcare issues and approving and denying thousand of

employee disability claims; and employing over 50 workers in NY; there is no registration with

the NYS Dept of State; no agent for service of process.

30. On information and belief Defendants Reed and Grace used corporate funds for

purchasing certain seats at the Pepsi Center in Denver. Reed wrote on June 25th, 2005 "We are

buying two box seats at the Pepsi Center. The owner is one of my dearest friends so we have lots

of flexibility. Stacey and I will take first dubs followed by Board and Senior Management team."

31. RGCORP and Reed as Chairman did not formally elect directors and never published or

approved Board of Director minutes as a Board. Judith Combs, RGCORP CFO and a non-board

member, would occasionally prepare a list of topics, 10 to 15 words, calling these descriptions

Corporate minutes, with no detail, decisions, corporate actions, follow ups, For example, here are

the Board Minutes for February as prepared and published as such by Combs.

> "On February 24, 2005 a board meeting was held at the Reed Group corporate offices. In
>
> attendance were, Presley Reed, Stacey Reed, Thomas Williams, and Ken Phillips. The board
>
> discussed the following: Internal management reorganization, Corporate goals for 2005,
>
> Development of new enterprise software"

32. Defendants Reed and Grace always exercised dominant control over the organization and

many times breached their fiduciary responsibility to Phillips as an external Board member; not

informing him and the Board of substantial issues that range from: several periods of operation

where RGCORP was dissolved by the State of Colorado and then reinstated, undisclosed

agreements concerning the actual ownership of assets previously transferred to Singapore and

their repatriation.

33. Another example of the Defendants' dominant control was the renaming of RGCORP on

December 29, 2004 to Reed Companies, Ltd. without advising the Board. The net effect of this is

that all RGCORP activities undertaken in 2005 using the name Reed Group, Ltd. were taken in

the name of a company that did not exist under that name. This was purposeful since Defendants, almost a year later on Dec. 20, 2005 filed an Annual Report in the name of Reed Companies, Ltd. with the Colorado Secy. of State pursuant to §7-90-301, et seq. and §7-90-501 of the Colorado Revised Statutes (C.R.S).

34. The Defendants used this dominant control to damage the Plaintiff by creating a shell company, RGLLC that upon information and belief had few, if any assets, clients, revenue or officers. RGLLC was and remains undercapitalized. RGLLC does not appear to have a legitimate corporate purpose and was used to deflect ownership conversations away from the primary enterprise of the Defendants, RGCORP. The Plaintiffs then created an Operating Agreement that outlined the specifics of Phillips ownership, declared that the Agreement fulfilled plaintiff's needs and then led Plaintiff to believe it was executed.

35. Defendants proceeded to use this shell, RGLLC as if it were becoming the primary company used by Reed and Grace; to announce the launch of the firm's premier and most profitable product, MDA, a publication that generates approximately 50% of the RGCORP profit and to announce the addition of Thomas Williams as a new Board member.

36. All of this activity was designed by the plaintiffs to create the impression to Phillips, the public and other Economic Interest Owners of RGLLC, that they had a share in the LLC and it was operating as it was intended. That is, to be the successor to RGCORP. All this was done by the Defendants to secure Phillips services over the next 18 months; while paying no compensation to Phillips for these services.

37. Defendants used their dominant control of both RGCORP and RGLLC such that the corporation and LLC has become a mere instrumentality, with Reed and Grace being the real actors controlling the circumstances for their personal benefit. The Defendants used this control to commit an `other wrong'; creating a worthless shell and offering ownership in this shell to Plaintiff in order to obtain Plaintiffs services at no cost thereby injuring Plaintiff.

38. This activity has resulted in an unjust loss to Phillips since he has now provided substantial services and Defendants have denied that they owe anything to Phillips for his time, effort, money, expertise brought to help the Defendants.

THE BEGINNING: DEFENDANTS UNDERTAKE A PUBLIC OFFERING IN SINGAPORE

39. Reed Group Holding LTD ("RGH Singapore") was incorporated in the Republic of Singapore on November 2 1999 as a private limited company.

40. On July 29, 2000 RGH Singapore issued a Prospectus (hereinafter referred to as the "Prospectus", see Exhibit C hereto) after completing a very complex US restructuring of RGCORP (page 36 and 37 of Prospectus). The purpose of the Restructuring was to group the RGCORP US-based entities under RGH Singapore for the purpose of listing the Company on SGX Sesdaq, the Singapore Stock Exchange.

41. As of July 29, 2000 all the assets of RGCORP were now outside the US and the Company owning RGCORP, Reed Group (US Holdings) LLC, a Colorado LLC was dissolved March 1, 2002. This left RGCORP stranded as a shell with a dissolved parent.

42. RGCORP, after two years of corporate inactivity, was itself dissolved by the State of Colorado on or about November 1, 2001.

43. What is important about the transaction described above is that the Defendants learned an effective technique (moving assets from RGCORP to an LLC and then having the LLC sold) that left the Defendants with a shell, a dissolved Corporation, RGCORP, that would be dormant and then would later come back to life owning all of the assets previously sold. This same technique would be used on December 29, 2004 in preparation for another liquidity event.

REED ASKS PHILLIPS TO JOIN A TROUBLED RGH SINGAPORE

44. In January 2002 Phillips was an informal advisor to Reed and was aware that RGCORP was having difficulty operationally and financially. Describing Calendar Year 2001 Reed wrote

to shareholders the firm was experiencing "...weak growth and both the President and I have taken a 10% wage reduction (S$74,000 SGD)." after a Calendar Year 2001 loss of S$4.7Million SGD. (Note: SGD is Singapore Dollars)

45. On 12 Sept. 2002 Phillips joined the Board of Directors ("Singapore Board") of RGCORP Singapore as a Director at the request of Defendant Reed.

46. During 2002 the RGH Singapore financial situation worsened as losses widened to S$12.2 million SGD in Calendar Year 2002 and the value of the firm plummeted.

47. On January 15, 2003 Phillips, at the request od Reed, resigned from the Board of RGH Singapore in connection with a corporate restructuring brought about by the change of control as Mr. Umar Abdul Hamid, previously a Member of Parliament Singapore,  exercised the right to buy 64.5 million shares from the company's former chairman Reed and president Grace, at 1.5 cents apiece and  became Chairman and CEO of RGH Singapore.  It now appears this sale was in direct contravention of the Moratorium agreed to by Reed and Grace, not to dispose of more than 50% of their shares. (See page 36 of the Prospectus, Exhibit C hereto.)

## REED ASKS PHILLIPS TO JOIN RGCORP SUCCESSOR TO RGH SINGAPORE

48. Reed asked Phillips on or about January 15, 2003 to serve as a director of RGCORP. RGCORP also known as Reed Group, Ltd. had been administratively dissolved on 11-01-2001 and re-activated via a reinstatement filed on May 31, 2002.

49. On May 12, 2003 *The Business Times* reported that the Defendants were selling their interest in RGH Singapore.

50. "Reed founder Presley Orelle Reed and President Patricia Stacey Reed (aka Grace) started bailing out late last year. Mr. Hamid, through investment vehicle Kineton Management, swept up the shares the Reeds were disposing of and became a director in January. The Reeds remain directors of US operations."  Mr. Hamid noted of this period "During the craze of the Internet, (RGCORP was) brought into Singapore to be listed, business was doing well in the US and South

America markets, but when they tried to roll out in South-east Asia, as you know, it was a flop."

51. On July 19, 2003 it was reported that the Chairman of Reed Group Holdings, Mr. Umar Hamid and James Mr. Hong sold 35 million shares at a profit of $3.26 million. The share sell-off comes barely six months after they took over the company from its two American founders.

52. Upon information and belief, on or about September 2003 certain intellectual property and assets of Reed Singapore were somehow repatriated to the United States. This enabled RGCORP to begin rebuilding the US domestic franchise using the intellectual property and assets previously 100% owned by RGH Singapore.

53. Phillips was told by Reed at this time that due to the perilous financial state of the company and the uncertainty of US tax considerations in connection with the repatriation of these assets and other tax matters relative to the previous S Corp status of the US operation, that he should continue as an uncompensated director and that the Board should delay any further conversation about Phillips ownership until these matters could be resolved. Reed also assured Phillips at that time that he would be properly compensated in any future or successor organization to RGH Singapore.

54. Calendar Year 2003 Summary: RGH Singapore was experiencing substantial losses, the Defendants were selling control, a new Chairman Mr. Hamid had emerged, employees in the US were taking pay cuts, morale was low and the fate of the firm's intellectual property was uncertain. Phillips began to provide services, all on an uncompensated basis, relying upon, as did many other individuals, (some of whom have negotiated settlements with Defendants) on representations and conversations with Defendants that this service would be compensated in a manner consisting of equity and ownership.

**PROSPECTS FOR RGCORP IMPROVE IN 2004; REED AND GRACE SEEK AN EXIT**

55. In Q1/ Calendar Year 2004 Phillips, operations and sales management immediately began the process of rebuilding the company, creating profitability of approximately $1.0 Million in

Calendar Year 2004.   Phillips provided significant support , averaging 40 hours per week, to the operation in all areas including strategy, general management, technology support, corporate financing.  The Board recognized this progress and stability in Q1/2004 and began to plan for the future.

56. In Q1/ Calendar Year 2004 Reed, Grace and Phillips discussed the overall goals of Phillips in the business.  Reed and Grace each discussed that that they had been shaken by the failure in Singapore and by the fact that they had almost lost all that they had worked for since 1977.  It was determined by Defendants that Phillips' primary role was to assist the Defendants in identifying and securing an exit from the business and translating their cumulative effort into cash.

57. Phillips made it clear that he had done this before as President and Founder of a family firm. Phillips laid out a plan for this liquidity effort.  It was clear to Reed and Grace, and acknowledged by them to Phillips at that time in 2004, that the firm could not afford to hire Phillips as an employee (as well as a CEO that would also be required) and that Phillips would be compensated as an owner.

58. As Phillips performed his assignment during Calendar Year 2004 Phillips discussed often with Reed that RGCORP was in a very risky position.  Available cash at 12-31-2004 was approximately $509,000 which was less than 2 weeks operating expenses. Shareholder equity was at $1.4Million after a profit of $1.0 Million from Calendar Year 2004 was added.  Reed shared this concern and voiced his frustration at the lack of progress at RGCORP and that as he was tired of working so hard, was weary of using his personal wealth and credit to assist the company and that Reed needed an exit plan for both he and Grace as soon as was possible.  Reed continued to assure Phillips that Reed's and Grace's intention was for Phillips to be an "owner" in the enterprise as compensation for accelerating this already on going process.

**NEED FOR NEW CORPORATE ENTITY & OWNERSHIP AGREEMENT EMERGES**

59. Phillips was asked by Reed and Grace to help the Defendants configure the business so that they could achieve the most favorable financial results and achieve an exit, a sale, a recapitalization or other liquidity event with favorable financial outcome that was designed to allow them to mitigate their risk. In January of 2005 a timeframe of 18 months was set as a guideline for accomplishing all of the activities necessary to prepare RGCORP for a liquidity event. In fact all of these objectives were achieved by Phillips and he secured a lucrative exit for Reed and Grace in Q3/2006 by securing an estimated payout of approximately $50 Million; by Plaintiff's estimate, plus the potential for several multi-year employment contracts and other perquisites. Phillips accomplished this within 21 months, 3 months after of the original 18 month target.

60. At the beginning of Calendar Year 2004 RGCORP Reed asked Phillips to develop several CEO candidates for RGCORP. Phillips undertook this task and brought Kevin Moran ("Moran') a CPA and a talented executive forward. RGCORP contracted with Moran as a consultant for approximately 6 month period to assess his skills and fit within the organization. During Q3/2004 RGCORP hired Moran as the new CEO, as a part of the plan to prepare RGCORP for a liquidity event.

61. As the new CEO Moran created Board minutes for December 16, 2004 in the name of the new LLC; and published them noting that the Board reviewed the new "Corporate Structure". Moran was involved in creating the LLC to provide a way for equity to be clearly stated. At the time there were at least 8 individuals that had indicated to Phillips they expected, due to writings and statements of Defendants, an equity share. Some, such as employees Childrose and Mayrer, had been promised equity for almost 10 years and had not seen a document. Moran moved to remedy this situation as a necessary first step approaching a financial transaction.

62. Grace and Reed on December 29, 2004, reinstated RGCORP which had again been dissolved, changed the name of the company from Reed Group Ltd. to Reed Companies Ltd., and created a Reed Group LLC with 2 members being Reed and Grace.

63. The creation of the LLC was done in preparation for 2 major events;

    a.  the creation of ownership for persons other than Grace and Reed and

    b.  the transfer of assets from the RGCORP to the new Reed Group LLC. This transfer was seen as necessary because the RGCORP had been entangled in so many transactions; dissolutions, tax events, repayment of officer loans and finally a foreign repatriation that Reed expressed his desire to keep RGCORP and its books, agreements, ownership and records private to Reed and Grace.

64. The above transaction was a version of an effective technique used so successfully in the Singapore transaction. Reed would move assets from RGCORP to an LLC and then have the LLC sold, recapitalized etc... That would leave the Defendants with 100% of RGCORP, that could later come back to life (if necessary) possibly owning all of the assets previously sold.

65. On or about February 19, 2005 Moran was dismissed as the CEO after 4 months at the request of Reed and Grace.. Moran was notified of the RGCORP decision by Phillips,  Mr. Moran notified Defendants of his intention to sue for promissory estoppel and breach of contract claims as well as equity redress, claiming he had been fired to avoid paying him the equity that he had been promised; to whit 6% of the equity of RGCORP with a vesting schedule.

66. Moran's termination had a very visible and detrimental impact on employee morale and RGCORPS public and internal reputation

67. In March of 2005 again the firm was challenged by uncertainty and confusion since Moran had begun many initiatives and had the confidence and support of a number of senior staff. Many RGCORP staffers also knew that he was the latest in a number of failed CEO's who had also asserted claims to promised ownership in RGCORP that was not delivered. His departure also had the potential for significant negative financial impact if his claim prevailed.

### <u>REED ASKS PHILLIPS TO ASSUME A MUCH EXPANDED ROLE</u>

68. In March of 2005, the Board decided not to hire a new CEO at this time; since it would be very expensive and potentially disruptive internally and externally. Additionally the matter of Moran was yet unsettled. At the request of the Defendants Reed and Grace, Phillips significantly increased his commitment to RGCORP at this time to fill the gap left by the departing CEO and in fact assumed many of Moran's duties and responsibilities including the interface with the investment community to secure an exit strategy for Reed and Grace.

69. In Q1/Calendar Year 2005 Phillips at the request of Defendants directly assumed many of Moran's FY2005 Goals (Exhibit B, hereto) and duties as directed by the Defendants. Moran had agreed upon these goals with Reed, Grace and the Board prior to his departure as part of Moran's compensation plan. In particular, of the 16 items Moran identified as his CEO Goals, Phillips was significantly involved in directing the effort in 8 items, or 50% as outlined in ("Phillips Completion of Moran's FY2005n Goals", Exhibit B, hereto).

70. In Q1/Calendar Year 2005 Phillips recommended that another seasoned businessman, Thomas Williams ('Williams") be added to the Board to help with Moran's duties and to assist with the liquidity transaction. His experience, gravitas and contacts were invaluable to Reed and Grace. Mr. Williams was at the time the Chairman of the Denver Branch of the Kansas City Federal Reserve, President and CEO of Williams Group LLC Trustee of the Boettcher Foundation, Chairman Elect of the First Data/Western Union Foundation, member of the Colorado Economic Futures Panel, and member of The Commission to Strengthen and Secure Colorado's Public Employee Retirement Administration (PERA).

71. In February of 2005 in order to recognize this expanded commitment by Phillips and others to RGCORP and to secure the efforts of several other key contributors, a team of long term external RGCORP advisors consisting of Nagle and Jim Casart, CPA, accountant to RGCORP met with the Board to develop a plan to preserve order and morale at the firm.

## URGENT NEED ARISES TO CLARIFY AND DOCUMENT OWNERSHIP

72. One of their major objectives of creating RGLLC was to memorialize what was promised to whom as ownership, an issue that was prominent in the minds of all the key employees in the wake of Moran's proposed legal action that was centered on ownership, to whit, claiming he was fired to prevent him from claiming an ownership interest.  The major objective was to devise a plan, to include ownership for the key members of the Board, Phillips and Williams and operating team members as follows:  Judith Combs, Thomas Williams, Shauna Bryngelson, Marty Reader, Karen Davis, Denise Meyrer, and Amy Mustoe.

73. The topic of clarifying ownership and the urgent need for a new legal structure, i.e. an Operating Agreement was taken up at a Board meeting on March 16, 2007.  Reed informed that Board that we should see a result shortly.

74. Result was a new Reed Group LLC Operating Agreement ("Agreement")  prepared by Nagle, outside counsel to RGCORP and sent to Reed and Jim Casart, the RGCORP outside CPA on March 25, 2005.  It was designed to reflect the prior agreement that occurred during the meeting regarding the creation of the necessary two tier ownership structure with the Reed and Grace as majority owners and possessing sole voting rights and Phillips and others as Economic Interest Owners.

## AN OWNERSHIP AGREEMENT AND CORPORATE STRUCTURE IS CREATED

75. The RGLLC Operating Agreement, (See **Exhibit A, page 29-30 Exhibit A**) Schedule memorialized Phillips (Noted in the Document as "Ken") as a 2 percent Economic Interest Owner, 100% vested.

76. Phillips was granted 33.33 percent of the externally held Economic Ownership, i.e. the (2% of 6%) in recognition by the Defendants of his role and the value he was providing to RGLCORP and RGLLC.

77. On March 30, 2005 Reed sent the Agreement to Phillips and Reed noted that he believed

that he had obtained the result he wished to achieve. Phillips read the Agreement and agreed that the two tier model; with Members and Economic Interest Owners worked as he and Reed had hoped.

78. Phillips informed Reed at that time that he agreed with Reed's assessment and that he (Phillips) accepted the results. Phillips also discussed the actual award amounts and informed Reed that the "amounts seem low for some individuals" and may need to be adjusted up to secure the required diligence and effort of certain individuals, in particular the award to Denise Mayer , a company "founder".

## THE NEW LLC IS IN FULL OPERATION

79. From March 31, 2005 all parties operated under the guidance and control of the Agreement. It was expected that over time that RGLLC would begin to take the place of RGCORP and this did happen. Every corporate action from Board Minutes to Press Releases to pending litigation was done in the name of RGLLC.

80. As early as April 2005 RGCORP used the new LLC as a mark and Reed Group LLC was thereby used in commerce. Reed sought clarification to use the name, a change from Reed Group, Ltd. asking on March 31st 2005 "I forgot to confirm what date to make effective the new name. This is for book publication purposes and others."

81. An April 2005 press release from Defendants, using the LLC noted: "Reed Group, LLC is very pleased to announce the appointment of Thomas Williams to its Board of Directors. Reed Group's Board of Directors was established in 2002. Other Board members include Kenneth Phillips, Stacey Grace, and Dr. Presley Reed."

82. A Press release for the flagship product used RGLLC. "Westminster, CO, April 12, 2005... Reed Group, LLC announces the availability of the Fifth Edition of the industry-leading evidence-based guidelines, *The Medical Disability Advisor: Workplace Guidelines for Disability Duration* (MDA) by Dr. Presley Reed. "

83. Generally anytime Reed Group was used in 2005 it was to describe Reed Group LLC since the alternative Reed Group, Ltd. did not exist under that name.

84. Upon Plaintiff's knowledge and belief, other Economic Interest Owners, Thomas Williams, Shauna Bryngelson, Marty Reader, Denise Meyrer were notified by Reed and Grace that they had an ownership interest in RGLLC.

85. The Defendants never once questioned the statements and assertions made by Phillips that he had ownership rights; when this question was posed by partners; senior employees of RGCORP and prospective investors. Reed held the fact out that Phillips was an 'owner' to potential investors to instill confidence in the company by said investors.

86. The existence of certain Economic Interest Owners, to include Phillips and Williams was made clear to all potential investors, including Trinity Hunt, where Thomas Williams, another RGCORP Board member communicated this ownership by Phillips and Williams.

**<u>DEFENDANTS ARE IN CONTROL OF ALL CORPORATE ACTION</u>**

87. While Phillips was a Board Member Reed and Grace filed 20 separate corporate actions with the State of Colorado on behalf of RGCORP without once notifying Phillips. The pattern that Board members did not need to check on activities assumed by the Defendants was clearly established. Phillips expected and relied upon Reed's promise that he would take care of doing what was required to finalize the equity arrangement.

88. On or about April 1, 2005 Phillips agreed to have Weekly Board meetings at the request of Reed. While unusual, the perilous condition of the company and the loss of the CEO demanded this commitment. In fact it also became a common pattern to schedule these meetings, receive acknowledgement from Phillips that he would attend and then cancel them as was done in 2005 on April 1, 18 and May 5, 17 and 24. This frequent cancellation policy and the absence of published and distributed meeting notes disrupted the continuity of information available to Phillips and required Phillips to assume that if discussed and agreed upon, the assignment had

been completed. In this instance the corporate action need to complete the adoption of the Agreement was left to the Defendants.

89. Defendants have never informed Phillips that they have done anything other than move forward with the adoption of the Agreement.

90. In conversations with Reed and by his actions it was clear Reed considered both Phillips and Williams owners and both were offered by Reed in his words "certain perquisites of owners" such as use of a vacation property i.e. CONDO: TRUSTEE TWH AT ASPEN MEADOWS which upon information and belief may have purchased in 1996 with corporate funds.

91. In Q4/Calendar Year 2006, relative to obtaining external financial support for RGL, Phillips presented alternative financial projections to investors potential investors. The information prepared for potential investors (the **"RGCORP Book"**) stated that the purpose of the new initiative was to provide liquidity to "shareholder", i.e. Phillips and "Founders" i.e. Reed and Grace. Reed directly instructed Phillips to include this statement to indicate to potential investors the precise role of Phillips as a shareholder and in the future growth of the business. This is a clear indication that RGCORP saw Phillips as a shareholder, who was seeking liquidity along with the Founders, Reed and Grace.

92. Pursuant to settlement negotiations Phillips provided a summary of Plaintiffs claims on January 19, 2006 and later on April 7, 2007 provided an earlier incomplete version of this Complaint to Reed and Grace; noting that one element of Phillips action was centered on equity in the LLC. Upon information and belief , many of the Economic Interest Owners , if not all, in the RGLLC have been offered equity terms substantially similar to those offered to the same individuals in the LLC agreement.

93. Upon information and belief, as of November 2007, the only Economic Interest Owner named in the Agreement to leave employment, Mr. Marty Reader, has been recognized as an Economic Interest Owner, and paid accordingly..

94.Plaintiff alleges that Defendants saw the potential opportunity to eliminate the need to pay Directors Phillips (and possibly Williams) under the Agreement and to do this the Defendants consequently had to deny all of the Economic Interest Owners a share.  Since many Economic Interest Owners were still necessary to Defendants they needed to adopt another approach; outside the now purposeless LLC.

95. On information and belief Defendants then sought to remedy the situation, where certain individuals had been promised equity as Economic Interest Owners, by creating new documents and new arrangements outside RGLLC.

96.On information and belief ; CFO Judith Combs, upon direction from Reed approached Director Williams; on or about Nov.1, 2006 to inquire if he would accept a settlement of a quarter of 1% as his equity entitlement.  Reed further noted to Williams that Reed "would write him a check now for $125,000" to settle the issue. Williams rejected the offer.

97.As a result of the conduct mentioned above Phillips has and continues to suffer significant financial harm.

## CREATION OF JOINT VENTURE BETWEEN PHILLIPS AND RGL

98. Phillips operated as a profit sharing joint venture partner with RGCORP,(the "RGCORP JV" ), in connection with a project to create a new disability guideline product.   This product called the ACOEM UMK was undertaken in partnership with the American College of Occupational and Environmental Medicine ("ACOEM"). The ACOEM UMK has been successfully developed, launched, distributed and sold by RGCORP since March of 2006.

## BACKGROUND OF THE TRANSACTION

99. In early 2004 RGCORP was approached by Mr. Barry Eisenberg, Executive Director of ACOEM, inquiring if RGCORP could help him and the medical society develop a new product. Reed and Grace, while recognizing the strategic and economic importance of this project, felt that RGCORP was completely unprepared to assume any financial risk and did not have the resources to undertake this new venture.

100. Phillips agreed in discussions with Defendants to deliver this product through the Proof of Concept stage ("POC") using his own resources.  Upon completion of the POC and its acceptance by ACOEM as a viable product, the ACOEM UMK was to continue to be developed from the POC through to a sustainable product.

101. This POC was approved by ACOEM, under a BETA testing process developed and overseen by Phillips and plans for the actual product were outlined in the  "ACOEM Utilization Management Knowledgebase  Project Overview Version 0.1published on Sept 5, 2005.  The ACOEM UMK was transitioned to internal RGCORP resources for support and continued development.  Phillips assisted this transfer and the transition occurred successfully in October 2005.

102. Phillips secured, through negotiations with ACOEM on behalf of and directed by RGCORP, a revenue share for RGCORP with ACOEM, the owner of the guidelines used in the new product. This favorable arrangement enables RGCORP  to retain a majority share of the

revenue from sales of this new product; with ACOEM retaining a minority share.  Phillips is entitled to a share of this revenue.

103. Based on the significant success of the ACOEM UMK, the American College of Environmental and Occupational Medicine awarded RGCORP in Q3/Calendar Year 2006 the exclusive license to distribute another closely related derivative product, the ACOEM Practice Guidelines 2nd Edition; which to the best of our information and belief generated significant revenue for ACOEM in 2005 exceeding $295,000.  This revenue, now shared by RGCORP  is accretive to the RGCORP JV and should also be shared with Phillips accordingly as a joint venture owner.

104. As early as June 2004 Phillips began to make significant direct cash and indirect financial contributions of computer systems, hardware, hosting, connectivity and software well in excess of $100,000 to the ACOEM UMK that was designed to help RGCORP expand the value of the enterprise. For over a year from June 2004 thru October 2005 Phillips funded this ACOEM UMK effort entirely.

105. On January 7, 2005 the significant economic importance and the potential to "us" as Joint venture partners in the ACOEM UMK guideline project were recognized by Reed when he wrote to Phillips. "There will be big money in training to use the new UMT Guidelines. Do we want to carve out a piece? Or sede (spelling: cede) that to them in exchange for more robust licensing fees to us" ; where us is RGCORP and Phillips

106. On Friday, June 10, 2005 the ACOEM UMK arrangement was memorialized to Reed based on Reed's request for clarification on the business arrangement.  Phillips writes below seeking to avoid a misunderstanding on the Joint ventured nature of the arrangement.

"...Just so we don't get going sideways and have a misunderstanding....The ACOEM bit is on my nickel and I expect to recover either directly form (spelling: from)  ACOEM or from the proceeds of the effort. In this I am a Joint venture with you and Stacey. I hope this is clear."

107. October 24, 2005 it was again clearly discussed, stated and memorialized in writings

from Phillips to Reed, Grace and others that Phillips and RGCORP were co-ventured in this ACOEM guideline project and that both would share in the ultimate rewards and profits of this venture.

"So we are all clear on this effort, Conal and (I) both absorbed some costs ( both cash, hardware, software and effort) to get this product to the point it is at. Reed has also absorbed some costs. Conal expects to recover the $40,000 he expended (remainder was reimbursed by me) as we become cash flow positive in this venture. For my part I will discuss a profit sharing or some other arrangement with SG/PR to compensate me for my effort. It may be that we convert it into some RGCORP warrant/equity etc."

108. On October 24, 2006, upon dissolution of the RGCORP board, Phillips made this claim concerning ACOEM UMK again explicit to RGCORP and directly to Reed as follows ".....On the UMK; we at one time discussed a profit split for my work done before RGCORP began to pay Conal directly. I paid him $30K and obviously worked with him on the product. I leave this to your good judgment to handle as you think fair" Reed acknowledged the validity of the claim and replied, "Will work amicably with you going forward to see that we both come out ok".

109. In the 18 Months that Phillips worked on this project, from January 2004 thru October 2005 Phillips expended well over 2000 hours working on this project, paid consulting fees of $30,000 and provided hardware and support in the range of approximately $100,000.

110. Despite efforts by Phillips no call or meeting with RGCORP has ever taken place concerning the RGCORP JV profit sharing arrangement. Phillips has yet to be compensated for this effort.

111. As a result of the conduct mentioned above Phillips has and continues to suffer significant financial harm.

## PHILLIPS' INVESTMENT ACTIVITIES ON BEHALF OF RGCORP

112. A key component of Phillips effort was the development of investment banking and private equity contacts; in particular to help RGCORP develop the correct story that best conveys the financial value that an investor can achieve can be obtained by investing in the firm. Phillips also represented the firm to the investment community to secure liquidity for RGCORP, Reed and Grace as he was directed by RGCORP to do as early As January 2005.

113. In order to accomplish this project of crafting a Corporate story, Phillips prepared specialized materials for his use, ("**Phillips Work product**") noting that portions of the presentation were Phillip's work product and not that of RGCORP . In August of 2006 the materials were originally presented by Phillips to Reed.

114. The format was presented to Reed as a term sheet, an outline of a possible deal, where Phillips was pursuing an investment acting completely as an external advisor. This independent status was to allow Phillips to make "reaching" statements on his behalf and yet allow Reed to back off from these statements if he liked. Reed also did not wish to have any of his payment "conditional" of future performance and he preferred that Phillips take the responsibility for future income projections and manage expectations.

115. At this time Reed told Phillips that he preferred an approach where Phillips, as a Board Member and a shareholder, presented BOTH the RGCORP "conservative scenario" and the "Phillips Growth strategy", while noting clearly that the Growth Strategy was Phillips work product not that of RGCORP.

Phillips complied and in all materials noted:

"The focus of the growth initiative, brought forward by Ken Phillips, a Board Member is to give the firm the opportunity to grow; while providing liquidity for the shareholder/Founders as well as maintaining a stake in the future growth of the new businesses." (**RGCORP Book Page 4**)   In this analysis Phillips was the shareholder and Founders were Reed and Grace.

116.  While much of the raw information prepared by Phillips and presented in the RGCORP

Book is commonly available to RGCORP, certain components of the plan, such as the growth of

the guidelines based on the new ACOEM UMK, the growth in data analytics and Software as a

Service (SaS) were concepts advanced by Phillips and were unique to Phillips in that they outline

a unique and new strategy for the firm.

117. Upon information and belief since October 24, 2006 RGCORP  has made extensive use

of the RGCORP  Book and Phillips work product, including the strategies and the details of the

economic results achieved by Phillips to obtain benefit for RGCORP for its enrichment.  Phillips

was to receive additional compensation based on the success of these efforts. Since this

information is being used without any benefit to Phillips, he should be compensated in the normal

industry accepted manner for advising on transactions of this nature consisting of a cash payment,

a "Lehman formula fee" and the right to purchase RGCORP stock at a favorable price.

## VALUABLE RESULTS CREATED BY PHILLIPS WORK PRODUCT CONTINUE TO ENRICH RGCORP WITH NO COMPENSATION TO PHILLIPS

118.The success of the Phillips work product and the effort Phillips expended to manage the

processes resulted in RGCORP obtaining a favorable valuation and proposal from several

investors.  This valuation, provided by a ready willing buyer in writing to a ready willing seller

sets the external market value of RGCORP and is an intrinsic and extremely valuable component

to use with other prospective buyers.  It set the level of value in Reed at over $50 Million Dollars

by Plaintiffs estimate.

119.In addition, to the best of Plaintiff's knowledge and belief the Phillips work product and

the Letter of Intent (the "LOI") based upon the Phillips work product which provides a valuation

and offer for RGCORP is being used by newly retained financial advisors and by RGCORP for

its enrichment while no compensation has been paid to Phillips.  Since this valuable information

is being used without any benefit to Phillips, he should be compensated in the normal industry

accepted manner for advising on transactions of this nature consisting of a cash payment, a

Lehman formula fee and the right to purchase additional RGCORP stock at a favorable price.

## PHILLIPS TO BE COMPENSATED ON OVERALL SUCCESS

120. Phillips and Reed often discussed at the Board and in other places the amount of the offer

by certain Private Equity firms that were engaged by Phillips. Reed stated that $XX, or 80% of

his number would be the estimate; Phillips contended it would be well above $XX Million;

(125% of his number) approaching $XX Million. Reed remarked to Phillips at this time in

September of 2005 that the "more he could get (as an offer) the more he (Phillips) would

receive". Phillips relied on this promise and fulfilled his responsibility and obtained a favorable

offer for the Defendants.

121. It was commonly known and discussed by Director Thomas Williams and Judith Combs

CFO of RGCORP, that Reed had indicated that he needed to have $XXX Million ("His

Number') after all other claims and shareholder issues were resolved. Phillips achieved an offer

substantially in excess of His Number, obtained a valid offer, to whit an LOI from a qualified

BONA FIDE ready and willing buyer and expected to be compensated accordingly due to the

promises and actions of the Reed. Phillips, Combs and Williams discussed this to mean that as the

offer exceeded a certain threshold amount, $XX Million, that Reed would be ready and willing to

raise the amounts of compensation to others.

122. Investment Banking & Mergers and Acquisition activity from Q1/Calendar Year 2005 to

Q4/Calendar Year 2006 was a primary focus for Phillips based on his conversations and other

communications with Reed and Grace. Phillips proven experience was valuable to RGCORP in

this area based upon his prior experience and personal and business connections.

123. In the almost two years between January 2005 and October 2006, Phillips committed

over 1500 man hours to this investment banking endeavor at the request of the Defendants and

received NO compensation from the Defendants.

124. Phillips succeeded in raising the valuation of the firm from a low of $XX Million as presented by a Bona Fide Investor in June 2006 to a high of 150% of the original $XX Million presented in October by a consortium of Private Equity firms. Phillips was perceived by the private equity firms, as well as potential acquirers such as IBM, as a senior RGCORP contact on subjects related to valuation and business combination.

125. In September of 2006 Phillips improved the cash component of an offer to purchase RGCORP that was available to the Defendants from $X Million to 250% of the $X Million by exhibiting the strength of the new ACOEM UMK product, the technology platform and encouraging the support of IBM for RGCORP as a partner. Phillips initiated or managed all conversations with investment bankers and private equity partners, prepared all of the collateral Material, i.e. RGCORP Book used to conduct these conversations.

126. Phillips relied on the above promise, as stated by Reed to Phillips, that the "more he could get (as an offer) the more he (Phillips) would receive" and continued to provide services to RGCORP with the reasonable expectation of increased compensation. Since the abrupt and arbitrary dissolution of the Board, Phillips has been deprived of another opportunity that was often discussed with Reed. RGCORP should be required to compensate Phillips for his service from September 12, 2002 thru October 24, 2006 and provide Phillips compensation in the normal industry accepted manner for advising on transactions of this nature consisting of a cash payment, a Lehman formula fee and the right to purchase RGCORP stock at a favorable price.

127. Since Reed dissolved the Board Oct. 24, 2006 there has been no communications with Phillips on any matters and in fulfillment of RGCORP 's responsibilities other than the letter from RGCORP 's attorney David Palmer indicating that no compensation would be provided.

128. As a result of the conduct mentioned above Phillips has and continues to suffer significant financial harm.

### REEDS  ARBITRARY ACTIONS IN DISSOLVING THE BOARD PREVENTED

**PHILLIPS RECOVERY FROM FUTURE PAYMENT ARRANGEMENTS**

129. For several years one of the significant components of Phillips compensation that was often discussed by Reed with Phillips and was to be Phillips' participation, as arranged by Reed, with a successor organization.  This future component of Phillips' arrangement with RGCORP was discussed by Reed and Phillips as way to handle the additional ownership interest promised to Phillips in a manner that shifted the responsibility for the expense to an acquiring company; rather than RGCORP.  Reed said that he saw this approach as favorable to Reed and Grace since they would not have to compensate Phillips from their collective ownership "share" but rather from a successor's share.  On the basis of this representation by Reed that Phillips would have substantial compensation provided by a successor, Phillips continued to provide significant services to RGCORP.

130. On several occasions on or about August of 2005, Phillips discussed this exact construction with the RGCORP CFO, Judith Combs, who informed Phillips that she was aware Reed had this objective and saw it as a possible way to pay compensation to contributors.  She noted her concern that this put both her, Phillips and Williams in a position that was less favorable to us than a direct agreement to provide compensation with RGCORP.

131. Phillips had extensive experience at RGCORP  which would make Phillips an important contributor to a successor company and Phillips considered this approach to be reasonable.  Phillips communicated his willingness to assist RGCORP  and entertain proposals and financial offers from successors.  No such proposals have been offered to Phillips.

132. Phillips was told by Reed that in negotiations with a prospective buyer, in this case IBM Global services that Reed had spoken to Mr. Steve Kagan of IBM and others and recommended to IBM that Phillips and Williams go forward with the acquiring entity IBM and that the value to Phillips of this transaction would be significant and a part of the compensation RGCORP provided for Phillips.  To the best of Phillips knowledge and belief these conversations were held

with Mr. Kagan at IBM's headquarters in Armonk, New York.  Phillips and Reed discussed this as a viable method to lower RGCORP 's current liability to Phillips and in this absence of this arrangement RGCORP  has an obligation to compensate Phillips for his services in connection with IBM and other investors.

133. On Oct. 24, 2006 the dissolution of the RGCORP  Board, with no prior discussion with Board Members, effectively prevented Phillips from participating with a possible acquirer or successor company to RGCORP  and deprived Phillips of the ability to recover a portion of the promised benefit from a future engagement. RGCORP  is clearly obligated to make provision to pay these amounts for work provided by Phillips at RGCORP 's direction in the absence of any future arrangement

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF:  BREACH OF CONTRACT**

1.Phillips repeats the allegations contained in Paragraphs 1 through 133 and by this reference incorporates them herein.

2.The contract between Phillips and the Defendants is attached as Exhibit A (Agreement). It is in the form of an LLC Operating Agreement.

3.In reliance on the Agreement, granting Phillips 2% ownership in RGLLC, Phillips extended significant services to RGCORP and RGLLC and performed all of his obligations under the agreement.

4.  RGLLC has breached the Agreement by refusing to acknowledge Phillips' Ownership Interest in the present instance and inform Phillips of his distribution and other rights.

5.  As a result of this breach by RGLLC, Reed, and Grace; Phillips has and will suffer harm, damages in an amount to be determined at the trial of this action, plus interest.

## SECOND CLAIM FOR RELIEF:  NEGLIGENT MISREPRESENTATION

1. Phillips repeats the allegations contained in Paragraphs 1 through 133 and by this reference incorporates them herein.

2. Defendant Reed and Grace were often careless about the status of just which organization was active; when and to which company they were discussing, what company was signing contracts or making promises of equity  The names of 2 companies or more than 2 companies, such as RGCORP RGLLC, were used interchangeably and carelessly.

3. The Board minutes for Dec. 16, 2004 were published in the name of the LLC, which did not even exist at that time. (LLC was created on 12-29-2004).

4. RGCORP, was not even in existence on Dec. 16th 2004 either,  having been dissolved by the State of Colorado and then not reinstated until December 29, 2004.  So essentially neither entity, RGCORP or RGLLC, was active when the Board meeting was held and the Board was not notified of either fact.

5. RGCORP (Reed Group Ltd.), the name that is used constantly and pervasively by Reed and Grace during 2005,  did not even exist all throughout 2005 . As of 12-29-2004 through 01-03-2006 there was an entity called Reed Companies, Ltd.( that was a rename of RGCORP) that existed .but its name was never used.  Further, Phillips or the Board was never notified that Reed Companies, Ltd. existed or that RGCORP did not exist under the name Reed Group Ltd.

6. In 2005 Phillips reasonably relied on the representations that RGCORP existed, (it

did not under that name) and he relied on the Defendant's representation that the LLC existed and that it was to be the successor for RGCORP.

7. Further Phillips relied on the representations that he was an economic member of RGLLC and that RGLLC would have actual financial value as the assets and function of RGCORP were transferred to RGLLC.

8. It is clear that Defendants expected Phillips to rely on the fact that he was an Economic Interest Owner in order to have him, and others similarly situated, such as Board Member Thomas Williams, continue to perform services.

9. Phillips did rely on Defendants words and writings concerning the promise of equity, presented to Phillips directly to his damage and detriment

10. Defendants had very special expertise in the manner of establishing, dissolving, renaming corporate identities; gained in the Singapore transaction In particular LLC intricacies see Prospectus Pages 45-48 and Restructure Pages 37-44.

11. Defendants had a special relationship of trust and confidence with Phillips and were required to provide full and accurate information to Phillips as a Board member, Joint Venture partner and a confidant. Phillips had continuous contact with investors, clients, employees, that required complete information.

12. Defendants were aware that their information would be acted upon and in fact Phillips did continue to perform significant services for the Defendants in reliance on the promise of equity.

13. As a result of this Negligent Misrepresentation Phillips has been and continues to be harmed.

## THIRD CLAIM FOR RELIEF:  QUANTUM MERUIT

1. Phillips repeats the allegations contained in Paragraphs 1 through 133 and by this reference incorporates them herein.

2. Phillips performed services for the benefit of RGCORP with a reasonable expectation of compensation for said services. RGCORP had full knowledge of Phillips' performance of services on RGCORP 's behalf and knew that Phillips had an expectation of compensation therefore.

3. Substantial benefit and enrichment was conferred on RGCORP by Phillips in the 4 years that Phillips provided services.  Phillips expended approximately 5800 hours, $30,000 in capital and absorbed approximately $50,000 in business related expenses over a 4 year period. The benefit was recognized and appreciated by RGCORP .

4. RGCORP has derived the benefit of Phillips services in the form of a substantial increase in profitability, creation of new products developed by Phillips, to whit the ACOEM UMK and increased sales via partner IBM Global.

5. The enrichment received by RGCORP resulted in an increase in the economic value gained by Reed and Grace from approximately $1 Million to $50 Million by Plaintiffs estimation.

6. Phillips is entitled to be compensated for the fair and reasonable value of his services which consisted of almost 4 years of service.

7. As a result of this enrichment, without any compensation,Phillips has suffered damages and harm for which Defendants are liable and RGCORP retaining such benefit without paying its value would be inequitable.

8.  By reason of the foregoing Phillips seeks an award of monetary damages in an

amount to be determined at the trial of this action, plus interest.


**FOURTH CLAIM FOR RELIEF:  PROMISSORY ESTOPPEL**


1. Phillips repeats the allegations contained in Paragraphs 1 through 133 and by this

reference incorporates them herein.

2. Defendants have promised an equity share in RGCORP and RGLLC to Plaintiff in

connection with the services he provided consisting of approximately 5800 hours,

$30,000 in capital and having absorbed $50,000 in business related expenses over a 4

year period.

3. Phillips continued his efforts based on this reasonable promise, he relied on this

promise and will be damaged if RGCORP does not perform these promises to

compensate Phillips.

4. Defendant Reed's promise in the matter of the ACOEM UMK product is

particularly damaging to Phillips where Phillips made cash contributions exceeding

$30,000 to help create this product.  Additionally Phillips was required to forego

participation in several other ventures, primarily those that he had ownership of such as

You Decide, INC. and the Prospect Institute, Inc. in order to not compete or interfere

with efforts being conducted by RGCORP.  This resulted in a significant loss of income

and opportunity.

5. RGCORP's continued use of the materials obtained for RGCORP during the

solicitation of investors is also damaging to Phillips since he developed these materials based on the promise that he would participate in the ownership of the company.

6. On several occasions Reed made it clear to Phillips the upon any liquidity event; i.e. sale, full or partial, an external investment of any size, that Phillips would receive a portion of the proceeds based on Phillips efforts to position RGCORP to obtain this liquidity event

7. By reason of the foregoing Phillips seeks an award of monetary damages in an amount to be determined at the trial of this action, plus interest.


**FIFTH CLAIM FOR RELIEF:  BREACH OF FIDUCIARY DUTIES**

1. Phillips repeats the allegations contained in Paragraphs 1 through 133 and by reference incorporates them herein.

2. Defendants breached their duties to Plaintiff as a Board Director of RGCORP and RGLLC, an Economic Owner of RGLLC by not disclosing many substantive corporate actions undertaken independently by Defendants.

3. Defendants also acted as if RGLLC and RGCORP were their personal assets as they pursued their own personal financial goals.  Specifically Defendants did not perform certain tasks required of them to properly memorialize and communicate to the Economic Interest Owners of RGLLC as was their duty.  Alternatively Defendants owed a duty to Plaintiff as a Director and Economic Interest Owner to inform him if they were for some reason not moving forward with the RGLLC.

4. Defendants breached their duties to Plaintiff by not contending that RGLLC was a viable entity when it in fact was not.

5.By not distributing profits for Calendar Year 2005 and Calendar Year 2006 as required in the AGREEMENT "Allocations and Income Tax Matters", RGCORP has breached their obligations under the Agreement to Phillips and other Economic Interest Owners.

6. Additionally certain significant assets of RGCORP assets were used to and sustain organizations such as Reed Review Services, Answermed.com and it is possible these assets and their proportionate loss/profits should be included as RGLLC assets and shared by the Members and Economic Interest Owners alike as required by the Operating Agreement.

7. By reason of the foregoing Phillips seeks an award of monetary damages in an amount to be determined at the trial of this action, plus interest.

## SIXTH CLAIM FOR RELIEF:  UNJUST ENRICHMENT

1. Phillips repeats the allegations contained in Paragraphs 1 through 133 and by this reference incorporates them herein.

2. Over the 4 years that Phillips served on the Board, RGCORP acquiesced in the provision of services and in fact participated with Phillips and encouraged his efforts. Phillips efforts were not conferred gratuitously.

3. Plaintiff expended approximately 5800 hours, $30,000 in capital and absorbed $50,000 in business related expenses over a 4 year period. There was no compensation provided by Defendants.

4. Plaintiff fulfilled all of the requirements of the Agreement.

5. RGCORP was aware that Phillips had the expectation of being compensated for his services to RGCORP .

6. As a result of denying Phillips any compensation and not paying Phillips and by having derived the benefits of the services performed by Phillips for the benefit of RGCORP and by terminating the relationship with Phillips in order to deprive him of compensation to which he is entitled, Defendants will continue to be unjustly enriched by having committed and continuing to commit the foregoing wrongs.

7. By reason of the foregoing Phillips seeks an award of monetary damages in an amount to be determined at the trial of this action, plus interest.

## REQUESTS FOR RELIEF

1. Enter Judgment for Phillips on all Counts of the Verified Complaint.

2. Order the Defendants to provide to Phillips with RGLLC shares equal to 2% ownership of RGLLC.

3. Order the Defendants to provide to Phillips with RGCORP shares equal to 2% ownership of RGCORP.

4. Order the Defendants to provide a full accounting of the ACOEM UMK Guidelines product line, with particular detail relative to RGCORP's contribution and the anticipated revenue.

5. Order the Defendants to provide Phillips his joint ventured ownership percentage(not to be less than 25%. ) and associated revenue for past and future licensing of the ACOEM UMK Guidelines.  Also to and disgorge 25% of the profits of this ACOEM UMK Guidelines product line to include distribution profits on the ACOEM Practice Guidelines 2nd Edition as well.

6. Order the Defendants to provide a full accounting of all the assets and specify the corporate purpose of the RGLLC, with particular attention to property repatriated from RGH Singapore with the possible assistance of Mr. Hamid; and the allocation of RGCORP assets to REED Review Services and Answermed.com.

7. Order the Defendants to discontinue use of the proprietary investment materials prepared as the Phillips work product. Details of this work product are redacted from this public document and will need to be confirmed in a conference between Plaintiff and Defendant.

8. Award Phillips damages as determined at trial to compensate Phillips in the normal industry accepted manner for advising on financial transactions an amount as may be determined at trial using a Lehman formula fee and the right to purchase RGCORP stock at a favorable price.

9. Award Phillips damages as determined at trial, plus interest and costs as provided by law.

10. Grant Phillips such other furthur relief as the Court deems just and proper under all circumstances.

### Jury Demand

Phillips demands a jury trial on all issues so triable.


Respectfully Submitted,




Kenneth F. Phillips, Pro Se Plaintiff


### Verification

I, Kenneth F. Phillips, a PRO SE Plaintiff do hereby declare that I have read the foregoing Complaint and know the contents thereof. The same is true to my knowledge except to those matters that are alleged on information and belief; as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this_28 day of June, 2007 in Natick Mass.



Kenneth F. Phillips, *Plaintiff*

**EXHIBITS**

**Exhibit A:  LLC Operating Agreement ("Agreement')**

**Exhibit B:   Moran's CEO Goals FY2005 AND**

**Phillips' Completion of Moran's FY2005 Goals**

**Exhibit C:    RGH Singapore Prospectus**

**End of Document. Exhibits following.**